## THE NEW YORK AND NEW ENGLAND RAILROAD COMPANY vs. THE CITY OF WATERBURY.

New Haven Co., Dec. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, Js.

The act of 1883 (Session Laws of 1883, ch. 107, sec. 2,) provides that "no new highway or portion of a highway shall be constructed across a railroad at grade." Held that when a street had been laid out across a railroad at grade before the passage of the act and partially constructed, but had not been actually completed for public use at the time the act took effect, such crossing could not thereafter be made.

And held to be of no moment that the railroad company had given permission to construct the crossing at grade. Private contracts cannot put limitations upon legislative power to protect life.

The charter of a city provided that every resolution passed by the common council should be sent to the mayor, who should either approve it, in which case it should become operative, or disapprove it, in which case he should return it to the body in which it originated. A resolution passed by the common council was not disapproved by the mayor, who

was in favor of its passage, but he made no written approval of it, not supposing the same to be necessary. Held that such approval could be given only by written declaration attested by his signature, and that a resolution not thus approved became inoperative.

And held to make no difference that there had been a practice of treating votes of the common council as approved by the mayor unless disapproved in writing.

[Argued December 7th, 1886,—decided January 26th, 1887.]

SUIT for an injunction to restrain the defendant city from constructing a highway across the railroad track of the plaintiff corporation; brought to the Superior Court in New Haven County. Facts found and case reserved for advice. The case is sufficiently stated in the opinion.

*C. G. Root*, for the plaintiff.

1. The vote of the common council of the city, by which it is claimed that the highway in question was laid out, never became operative from want of the legal approval of the mayor. The city charter provides that every such resolution, after it has passed both bodies, "shall be sent to the mayor, who shall either approve it, in which case it shall become operative and effectual, or disapprove it, in which case he shall return it to the body in which it originated with a statement of his objections, etc." The resolution in this case was never sent to the mayor. His presence during the deliberations of the common council, and a knowledge by him of the clerk's minutes, is not such a presentation to him as the charter requires. *State* v. *Newark*, 1 Dutch., 399. And his approval can be shown only by the record. An approval is not a mere ministerial act, but judicial in its nature, requires the exercise of discretion, and must be a matter of record. The charter requires that all the votes and proceedings of the common council be entered upon the city records, and surely the crowning act which makes such votes and proceedings operative cannot be left to be proved by parol evidence. *Buell* v. *Cook*, 4 Conn., 244; *Gilbert* v. *City of New Haven*, 40 id., 104; *People* v. *Schroeder*, 76 N. York, 160. It can make no difference that it had been the practice to treat the written approval of the mayor as un-

necessary, and to assume his approval when there was no disapproval. Such laxity of practice cannot change the law.

2. But even if the vote was a valid one and operative, yet the city has no right to go on and construct the highway across the plaintiff's track at grade. The highway had not been constructed when the act of 1883 was passed, which provided that no highway should thereafter be constructed across a railroad at grade. Session Laws of 1883, ch. 107, sec. 2; *Kane* v. *N. York & N. Eng. R. R. Co.*, 49 Conn., 139.

*S. W. Kellogg* and *G. E. Terry*, for the defendant.

1. The lay-out of the street across the railroad track was legally made unless the vote of the common council adopting it required the approval of the mayor in writing to make it valid and binding. It would seem from the language of the charter that no formal act on the part of the mayor is necessary to approve a resolution. The language is " shall either approve it, in which case it shall become operative and effectual." His duty ends with a simple *approval*, without any provision how it shall become manifest, while on the other hand, if he disapprove, he has a further duty to perform, namely, to return it with a statement of his objections in writing. We claim that all votes not disapproved by the mayor and returned with his objections in writing, stand approved by him and become operative and effectual, as there are but two alternatives provided—approval and disapproval. To support the plaintiff's claim we must presume that the mayor neglected to perform a duty clearly imposed upon him by law, while under our claim we impute to him no negligence or violation of law. *Blanchard* v. *Bissell*, 11 Ohio St., 96; *Creighton* v. *Manson*, 27 Cal., 613; *Taylor* v. *Palmer*, 31 id., 241. Besides this, it is found that it has never been the practice for the mayor to express his approval of any vote affirmatively in writing, but all proceedings of the common council have been proceeded with upon the assumption that all votes were approved by the mayor unless dis-

approved by him in writing. Usage in such a matter is admissible and sufficient. 1 Dillon Municp. Corp., 3d ed., § 93, and note.

2. The act of 1883, which provides that thereafter no new highway shall be constructed across any railroad at grade, is not to be construed as prohibiting the completion of this highway, which had been formally laid out before the passage of the act, and all constructed except a small portion across the railroad track. On June 1st, 1883, when the statute went into effect, the city had legally laid out and opened the street, a person had located his house upon it, and the city had obtained permission from the railroad commissioners to cross the plaintiff's track at grade. When the city entered upon the improvement it had full power to lay out a street across the plaintiff's track, and, so far as it has proceeded, it has acted strictly according to law; and it seems absurd to so construe the law that it cannot complete what it has already lawfully begun. The city had acquired a vested right to complete the highway across the land of the plaintiff which subsequent legislation could not disturb. *Gallup* v. *Tracy*, 25 Conn., 10; *Downs* v. *Town of Huntington*, 35 id., 588.

PARDEE, J. This is a petition for an injunction to restrain the defendant from constructing a highway intersecting the plaintiff's railway track at grade; reserved, upon the facts found, for our advice.

In June, 1881, the court of common council of the city of Waterbury voted to lay out a highway to be called Burnham street, to cross the plaintiff's railway at grade.

The charter of the city provides as follows:—"Every vote, resolution, order, etc., which passes either body shall be transmitted to the other, and if passed there shall also be sent to the mayor, who shall either approve it, in which case it shall become operative and effectual, or disapprove it, in which case he shall return it to the body in which it originated, at or before its next regular meeting, with a statement of his objections, and after such statement has been

read in that body," etc. The mayor did not in writing approve the resolution laying out the highway. The court below has found that " it has never been the practice for the mayor to express his approval affirmatively in writing of any action, vote or resolution of the common council, except in reference to the general ordinances. But all acts, votes, resolutions and proceedings of the court of common council have been proceeded with upon the assumption or theory that all such votes, resolutions, acts and proceedings were approved by the mayor unless disapproved in writing by him. And in all instances where he did disapprove he has done so in writing."

The mayor testified as follows:—"I was mayor in 1881 when the lay-out of Burnham street was adopted by the court of common council. Had I supposed it was necessary to sign my approval of such vote to make it valid, I should have done so, as I was favorable to and approved of such lay-out, and in fact I did not disapprove of the same. Said vote was not sent to me for approval, nor did I express my approval of the same to any one or in any way, to my knowledge or recollection."

In 1883 the legislature passed an act which provides " that hereafter no new highway or portion of a highway shall be constructed across any railroad at grade."

In January, 1886, the defendant undertook to construct the highway across the plaintiff's railway at grade. The plaintiff interrupted the work by a temporary injunction; it asks for a perpetual one.

Whenever, either by constitutional or legislative requirement the president of the United States, the governor of a state or the mayor of a city is required to approve an act of congress, or of a legislature, or of a court of common council, the word "approve" means more than the unexpressed mental acquiescence of the individual in the propriety of what has been done; it means that the officer, in his official capacity, as the guardian of the interests of a community, having in view its welfare, and not his personal wish or advantage, shall consider the proposed legislation and de-

termine that it is proper, and make that fact known to all men with absolute certainty, by some visible, unmistakable and enduring mark, to wit, by written declaration attested by his signature. It is not enough that in the future when the question is made—is such an act of congress, of legislature or of common council binding upon the country, state or municipality, that it should depend for decision upon the memory and testimony of an officer as to what was his unexpressed thought, at a former time, concerning it. Such uncertainty would be unendurable, and, therefore, we must. assume it to be outside of the meaning of any constitution or law. The fact that the mayor omitted to approve in writing many other resolutions of the court of common council is no legal justification of his omission in the case before us.

Secondly. The plain purpose of the act of the legislature is to make possible the coming of the day when there shall not be in this state an intersection of a highway with a railway at the same grade ; to bring that day nearer by forbidding the addition of another to the many such then in existence. It means that although a highway may have been previously laid out, partially constructed and even built upon, if it has not actually been completed for public use across the rails of the railway, such crossing shall not thereafter be made. This peremptory arrest of the completion of a highway lawfully commenced is a seeming interference with the rights of individuals and of the public, but only in seeming. In fact such crossings are public nuisances dangerous to human life ; and no man has a vested interest in the creation or continuance of such a nuisance ; in the exercise of the power of protecting human life the legislature may at any time and without notice abate it or prevent its existence. If equity requires thereafter compensation to an individual, presumably he will obtain it. It is of no moment that the plaintiff had given to the city permission to construct the crossing ; private contracts may not put limitations upon legislative power to protect life. If the crossing had been constructed upon the faith of such permission, and

in the absence of any prohibitory statute, the legislature by virtue of the same power could have ordered a removal on the next day. Burnham street failed of a legal lay-out by reason of the omission of the mayor to certify in writing his official approval of the resolution of the Court of Common Council to lay it out. If it had been legally laid out, the construction of any portion of it across the plaintiff's railway at grade became illegal before it was accomplished, by reason of the act of the legislature referred to.

The Superior Court is advised to issue the permanent injunction prayed for.

In this opinion the other judges concurred.

55 25
68 400

