PATERSON AND RAMAPO RAILROAD COMPANY and ERIE RAILROAD COMPANY

*v.*

THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

[Submitted October 30th, 1912.   Decided November 11th, 1912.]

The "construction of a highway," within the act of April 21st, 1911 (*P. L. 1911 p. 383* § *21*), providing that no highway shall be constructed across railway tracks at grade without first obtaining permission therefor

from the board of public utility commissioners, contemplates such grading, curbing, flagging, planking, or other physical alteration or addition as may be necessary to prepare it for use, and the highway is not constructed by simply laying it out on paper and filing a map, since "construction" implies the performance of work; the fitting of an object for use or occupation in the usual way, and for some distinct purpose; to put together the constituent parts; to build; to fabricate; to form and to make—and hence that section applies to a highway crossing laid out by ordinance, but not physically constructed, prior to its enactment.

On final hearing on bill, answer, replication and proofs.

*Mr. Charles Bradley,* for the complainants.

*Mr. Edward F. Merrey,* for the defendant.

HOWELL, V. C.

In 1841 the complainant the Paterson and Ramapo Railroad Company was incorporated. It constructed a railroad sixty-six feet wide through the city of Paterson and across the plot of land now in controversy. Later, the Erie Railroad Company, the other complainant, acquired land on both sides of the track of the Paterson and Ramapo Company at this point. These rights of way were subsequently covered with railroad tracks; they now comprise a part of the main line of the Erie Railroad Company. Some time prior to May 20th, 1908, the city of Paterson had opened a street called Sixth avenue which extended to the line of the right of way of the railroad on both sides thereof, but until that date no attempt had ever been made to continue the same across the railroad. On May 18th, 1908, the board of public works of the city passed an ordinance to lay out and open Sixth avenue across the right of way of the complainants, designating the same by the location of the centre line, and providing that this avenue between the points so laid out and established should be opened and an assessment of the benefits and award of damages made in accordance with law. This ordinance was approved by the mayor on May 20th, 1908, but before any proceedings could be taken under it it was attacked by writ of *certiorari*. The supreme court upheld the validity of the ordinance by its judgment entered on August 24th, 1911. Subsequently the case

was reviewed by the court of errors and appeals; the judgment of the supreme court was affirmed in June, 1912. After the decision of the supreme court the city, on September 14th, 1911, served upon the complainant the Erie Railroad Company a notice requiring it to construct a good and sufficient passage across its right of way at Sixth avenue, and to plank the street, pay for the roadway and construct a sidewalk, and further notifying it that in default of doing this work within thirty days the city would do it and charge the cost thereof to the said complainant. This notice was given in pursuance of a resolution or ordinance to that effect passed on September 6th, 1911. After the service of this notice the complainants filed their bill to restrain the city from proceeding to plank the crossing and construct the sidewalk, upon the ground that it would be a violation of the twenty-first section of the act providing for the creation of a board of public utility commissioners, approved April 21st, 1911, which provides as follows:

"21. No highway shall be constructed across the tracks of any railroad company at grade, nor shall the tracks of any railroad company, street railway or traction company be laid across any highway so as to make a new crossing at grade, nor shall the tracks of any railroad or street railway or traction company be laid across the tracks of any other railroad or street railway or traction company, without first obtaining therefor permission from the board; *provided, however*, that this section shall not apply to the replacement of lawfully existing tracks."

The only question raised is whether the foregoing section applies to the case, and, if so, to what extent, or, in other words, whether the city of Paterson may, to use the wording of the statute, "construct" a highway across the tracks of the railroad company without permission of the board of public utility commissioners.

The operative part of the section appealed to is that "no highway shall be constructed across the tracks of any railroad company at grade," without first obtaining therefor permission, &c., and the first question that arises is what is meant by the "construction of a highway." Does it mean simply to lay out the highway on paper and file a map thereof in some public office, or does it contemplate such grading, curbing, flagging, planking

or other physical alteration or addition as may be necessary to prepare the crossing for use by horses, wagons and other vehicles, by foot passengers, and by the ordinary traffic of a large manufacturing city? The plain words of the statute indicate to my mind that the latter is the intention. To survey a piece of land and make a map of it, to designate it as a public street, and to file the map, cannot in any sense be said to be the construction of a highway. To construct a building it is not sufficient to make a drawing of it and file it; it is necessary to make a physical erection which can be used as buildings ordinarily are used, and so I think that a highway cannot be said to be "constructed" until it shall have been made ready for actual use as a highway. The word "construction" implies the performance of work; it implies also the fitting of an object for use or occupation in the usual way, and for some distinct purpose; it means to put together the constituent parts, to build, to fabricate, to form and to make. The use of the word in connection with a highway manifestly means the preparation of the highway for actual ordinary use, and not for mere delineation thereof on paper, or the taking of land for the purpose of a street.

My attention has been called to the case of *New York and New England Railroad Co.* v. *Waterbury, 10 Atl. Rep. 162.* There the legislature of Connecticut had passed an act providing "That hereafter no new highway or portion of a highway shall be constructed across any railroad at grade." It was held that this statute rendered the construction of a grade crossing illegal, although the highway had been laid out and was partially constructed before the passage of the act. In considering the statute the court said: "It (the statute) means that although a highway may have been previously laid out, partially constructed and even built upon if it has not actually been completed for public use across the rails of the railway, such crossing shall not thereafter be made. This peremptory arrest of the completion of a highway lawfully commenced is a seeming interference with the rights of individuals and of the public, but only in seeming; in fact, such crossings are public nuisances dangerous to human life, and no man has a vested interest in the creation or continuance of such a nuisance." A similar ruling was made by the court of

appeals of New York in *Railroad* v. *Buffalo, 200 N. Y. 113.* There the city of Buffalo attempted to continue Delavan avenue across the tracks of the plaintiff, the city having many years before obtained the right to do so. In the meantime, however, the legislature passed an act requiring the permission of the public service commission to the construction of crossings over railways. The appellate division held that the city should be enjoined from extending the avenue across the tracks of the railroad company until it had secured the determination by the public service commission as to whether such avenues should be *constructed* over or under said railroad or at grade and the manner in which such crossing should be *constructed;* thus declaring the paramount jurisdiction of the public service commission over a situation which had been created before its establishment, and holding that the municipal corporation had not acquired any vested right as against the subsequently declared public policy of the state. This was affirmed by the court of appeals. Incidentally it may be observed that the New York act uses the same word (construct) which is the basis of the controversy in this case, and gives it the same interpretation that is here contended for by the complainants.

On the other hand, the city relies upon the case of *Ligonier Valley Railroad Co.* v. *Latrobe, 65 Atl. Rep. 548.* The Pennsylvania statute of 1901 provided that, except as elsewhere in the act prescribed, "All crossings *hereafter* established, whether of highways by railroad or of railroad by highways shall * * * be above or below the grade thereof." In that case the borough of Latrobe opened two streets across the railroad. Two years later it served the railroad company with notice to provide and lay proper crossings at the intersection of the railroad with these streets. The company failed to comply, and the borough took steps to put down the crossing. The bill was then filed to restrain it from making the construction. The court held that inasmuch as the highway, including the crossing, had been laid out before the statute of 1901 was passed, the statute did not and could not apply, and that therefore the borough had the right to construct the crossings, and the injunction was refused. In its facts the case resembles the one in hand, but I am unable to

follow its reasoning or reach the conclusion that the court did reach, unless there is a clear distinction between "establishing" a crossing and "constructing" one. I am constrained to follow the reasoning of the Connecticut and New York courts as announcing the more reasonable rule of statutory construction.

As it looks to me the legislature has by the act in question formulated a public policy for the state which cannot be controlled, enlarged, restricted or varied by the courts; they can only enforce the rule which the legislature has prescribed. It was the manifest intention of the legislature to place the whole question of railway crossings at grade under the control of a central body having administrative functions, for purposes of convenience of safety and of uniformity of procedure, and for this purpose it has conferred upon the board of public utility commissioners plenary power to act for the protection of the people from such accidents as are liable to happen at railway crossings. This policy appears in the legislation of this state as far back as 1862, and has been continued by a series of legislative declarations tending to the abolition eventually of grade crossings. In what is substantially its present form it appears first in the act of 1909 (now repealed, *P. L. 1909 p. 281*), section 3 of which forbade the construction of any *new* street or highway across the tracks of any railway company at grade without the permission of the board of railway commissioners, and it has been enlarged and extended by the act of 1911, the twenty-first section of which is hereinabove quoted at length, so as to include the construction of highways generally across railways at grade.

I am of the opinion therefore that the permission of the public utilities commission must be obtained before the crossing can be actually constructed, and that such permission must be sought by the city for the reason that it is the moving party.

I will advise an order for an injunction as prayed.