[Civ. No. 2027. Third Appellate District.—December 9, 1919.]

CITY OF RED BLUFF, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] NUISANCES—OBSTRUCTION OF CITY STREET BY RAILROAD COMPANY—ACTION TO ABATE—INSUFFICIENT DENIALS.—In an action by a municipality against a railroad company to compel the removal of certain obstructions to travel placed by the latter across a public street in said municipality, denials that the embankments or tracks is or are an unlawful obstruction of the street, or an unlawful interference with the use of the street by the public, are insufficient to raise an issue of fact.

[2] ID.—TEMPORARY CLOSING OF STREET—PERMISSION TO USE FOR RAILROAD PURPOSES—WITHHOLDING OF PERMANENT RIGHTS.—A resolution

---

2. Power of municipality in absence of express legislative authority to grant street franchise for railroad, note, 22 L. R. A. (N. S.) 925, 927, 935.

by a board of town trustees temporarily closing a portion of a certain street to public travel and granting a railroad company permission to occupy the same for the purpose of carrying on its railroad business until the further order of that or some future board of trustees of said town, and further providing that no permanent rights are thereby granted to the railroad company, does not cause such street to cease to be a highway, or give the railroad company any right to obstruct the street any longer than the town sees fit to permit such obstruction.

[3] ID.—APPLICATION TO RAILROAD COMMISSION FOR RELIEF—WAIVER OF RIGHT TO MAINTAIN ACTION—JURISDICTION OF COMMISSION.— The fact that the board of town trustees made application to the Railroad Commission to compel the railroad company to repair its tracks and place the same in such condition that the street could be traveled by vehicles, and that after a hearing the Railroad Commission denied the application, did not bar the town's right thereafter to maintain an action to abate the obstruction. Where the constitution and laws of the state do not confer jurisdiction of the subject matter upon the Railroad Commission, such jurisdiction cannot be conferred by consent.

[4] ID.—USE AND REPAIR OF STREETS—POWER TO SUBMIT TO RAILROAD COMMISSION.—Not only is the board of trustees of a city without power to submit the use and repair of its streets to the Railroad Commission, but even the electors of such city cannot by an affirmative vote at an election submit such matters to the commission.

[5] ID.—WITHDRAWAL OF TEMPORARY PERMIT—CONTINUED OBSTRUCTION —TRESPASS.—The granting of a temporary permit to a railroad company to construct its tracks across a public street, and the temporary cessation of travel thereon does not destroy its character as a public street; and when the railroad company continues to obstruct it after the permit is withdrawn, it becomes a trespasser, to all intents and purposes, as it would have been if it had in the first instance obstructed the street without permission.

[6] ID.— OBSTRUCTION OF HIGHWAY — NUISANCE — JURISDICTION TO ABATE.—An obstruction of an established highway constitutes a public nuisance which the superior court has jurisdiction to abate.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank Freeman and George R. Freeman for Appellant.

McCoy & Gans for Respondent.

BURNETT, J.—This cause was tried in the superior court of Tehama County, before Honorable John F. Ellison, judge thereof, who rendered a decision in favor of plaintiff. The facts of the case and the reasons for his conclusion are clearly set forth in an opinion filed in said superior court by Judge Ellison, and, as I am in accord with the views therein expressed, I take the liberty of quoting said opinion as follows:

"The plaintiff brings this action to obtain a decree for the removal of certain obstructions to travel placed in Cedar Street in the city of Red Bluff by the defendant corporation.

"Paragraph II of the complaint alleges that during all times since 1876 there has existed and does now exist within said plaintiff, and running through the entire width thereof from east to west, a certain public street and highway known as Cedar Street. That during all of said time said Cedar Street has had a width of eighty feet, and that during all of said time said street has been and is now a regularly and legally established and existing public street and highway of the said city of Red Bluff for the use and convenience of the citizens of Red Bluff and of the public generally for all kinds of travel and use.

"The complaint then alleges that the defendant is a railroad corporation and maintains a line of railroad across the streets of Red Bluff, including Cedar Street, over which it operates trains and cars.

"Paragraph VI alleges:

" 'That the said tracks of defendant within and across the said Cedar Street are so constructed and do now so exist that the rails of said tracks are a considerable distance above the level of the ground and surface of the street and in such condition as to obstruct and prevent entirely the use of said street by vehicles and teams and other conveyances at the places where said tracks cross the said street.

" 'That defendant has also made and now maintains an embankment within said street of such size and condition as to prevent the use of said street by vehicles and teams and other conveyances at said point and place in said street.'

"The complaint alleges that plaintiff has demanded of defendant that it so construct its tracks and property that the street may be used by vehicles and teams across said tracks, but defendant has neglected and refuses to do so, and

threatens to keep said tracks and property in such condition that said street cannot be used by teams and vehicles.

"The prayer of the complaint is that said tracks and property of defendant in the condition they now are be declared a public nuisance, and that the defendant be required to abate the same, and to put its property in such condition that Cedar Street may be traveled by teams and vehicles as a public street and highway.

"The answer of the defendant consists of:

"1. Denials of certain allegations of the complaint;

"2. It sets up a certain resolution of the board of trustees of the plaintiff city made May 13, 1902, and claims that this resolution closes Cedar Street for all time as a public highway; and

"3. It sets up certain proceedings before the state Railroad Commission as an estoppel against the plaintiff's maintaining this action.

"The plaintiff has filed a general demurrer to the whole answer; a general demurrer to the 'First Answer,' and also a general demurrer to the 'Second Answer.' The plaintiff has also made a motion to strike out what is designated as the 'Second Answer to the Complaint.'

"Taking up the demurrer to the 'First Answer to the Complaint': This consists entirely of denials, and the question to be determined is, Are the denials sufficient to raise a material issue?

[1] "The first paragraph of the 'First Answer' denies that the embankment or tracks is or are an *unlawful* obstruction of Cedar Street, or an unlawful *interference* with the use of the street by the public.

"These denials so far are clearly insufficient to raise an issue of fact.

"The obstruction of the street and the interference with travel are admitted, as is also the allegation of the complaint that defendant threatens to keep said street in such condition that it cannot be traveled by vehicles. The only denial is of the legal conclusion that the obstruction and interference are *unlawful*.

"The complaint alleges that since 1876 there has existed and does now exist in said city a highway known as Cedar Street. This allegation of the complaint is not denied. The complaint further alleges that Cedar Street has been

and is now a regularly and legally established and existing highway.

"The answer denies that since May 13, 1902, Cedar Street has been or that it now is a regularly or a legally established and existing street and highway of Red Bluff, and denies that it has since that date been open to the use of the public. This is the only denial, and it is very doubtful whether it raises an issue. It does seem to deny that Cedar Street is an existing highway, and, perhaps, this raises a triable issue.

"The demurrer to the first defense will be overruled.

"As to the second defense and the demurrer thereto:

[2] "The first part of it consists of a copy of a resolution passed by the board of trustees of the city of Red Bluff May 13, 1902. This resolution, after certain recitals, was as follows:

" 'It is therefore ordered that said Cedar Street between Madison Street and Monroe Street in the city of Red Bluff be and the same is hereby temporarily closed to public travel and that the S. P. Co., be granted permission to complete and occupy said boiler-house, and that said company be permitted to also occupy and use said Cedar Street so closed for the purpose of carrying on its railroad business, and until the further order of this or some future board of trustees of the said town;

" 'Provided that this permission and use shall be and they are upon the express condition that the title of the said street thus closed to public travel shall be and remain in the public as a street and hghway, and that no permanent rights herein are hereby granted to the said Southern Pacific Company or its successors in interest, and that said company or its successors in interest shall not by user or adverse possession acquire any title thereto as against the public or the town of Red Bluff.'

"The answer then alleges that since the passage of said resolution Cedar Street has been closed to travel.

"The resolution speaks for itself, and it needs no argument to reach the conclusion that such permit to use Cedar Street temporarily did not cause it to cease to be a highway, and did not give the S. P. Co. any right to obstruct any longer than the city saw fit to permit such obstruction. The resolution expressly provides: 'That no permanent rights

therein are hereby granted.' It is conclusive that this resolution gives to the railroad company no justification .to obstruct said street at this time against the wishes and will of the city.

"The second part of this 'Second Defense' sets up certain proceedings had before the Railroad Commission as a bar to this action.

"This part of the answer alleges that the city trustees made application to the Railroad Commission to compel the railroad company to repair its tracks and place the same in such condition that Cedar Street could be traveled by vehicles. And that after a hearing the Railroad Commission denied the petition of the city.

"From this the answer draws the conclusion:

"1. That by making said application to the Railroad Commission the city acknowledged and assented to the jurisdiction of the Railroad Commission to make an order denying the right of the plaintiff to remove the obstructions to travel placed thereon by the defendant; and

"2. That under the constitution and laws of this state the Railroad Commission had *exclusive* jurisdiction to entertain an application to remove unlawful obstructions placed in a street and interfering with its use.

[3] "As to the first part of this claim it is sufficient to say that consent never confers jurisdiction of the subject matter. If the constitution and laws of the state do not confer jurisdiction upon the Railroad Commission to permit the railroad company to obstruct the streets of a city to the extent of preventing travel thereon, then it has no such jurisdiction, and parties by appearing before it cannot give it jurisdiction.

"That the board of trustees could not bind the city by any act of it submitting the question of the use or removal of unlawful obstructions from its streets to the Railroad Commission is apparent.

[4] "Not only is the board of trustees of a city without power to submit the use and repair of its streets to the Railroad Commission, but even the electors of such city cannot by an affirmative vote at an election submit such matters to the commission.

"Section 1 of an act approved June 7, 1915 (Stats. 1915, p. 1273), provides that a city may surrender its powers to

supervise and regulate public utilities to the Railroad Commission, but 'This act shall not be construed to authorize any city to surrender to the Railroad Commission its powers of control to supervise and regulate the relationship between a public utility and the general public in matters affecting the health, convenience and safety of the general public, including matters such as the use and repair of public streets by any public utility,' etc.

"Section 2 of the act provides for an election to submit the question of surrender of control over public utilities to the Railroad Commission, but contains the same proviso as section 1 above quoted.

"The situation is that in 1902 the S. P. Co. accepted from the city of Red Bluff a permit to temporarily use one of its streets so as to obstruct travel thereon, and until the further order of the board of trustees, and that the permit should not confer on the railroad any permanent right, and said railroad company should not by use or adverse possession acquire any title to the street.

"The company by accepting this permit assented to all its terms and conditions. It agreed that it would only claim the right to use the street in a manner to obstruct the travel only so long as the city did not cancel the permit.

"This is a suit to enforce such contractual obligation, and we are met with the proposition that the courts are without jurisdiction to determine the contractual rights of the parties and decide whether or not the railroad company is complying with its part of the agreement.

"I cannot assent to this view.

"Counsel for defendant in his brief says: 'We do not contend and never have contended that the city has not the right to maintain an action against one who obstructs its streets.'

"It seems to me this concession puts an end to the defense set up.

"The complaint alleges that the company is obstructing the street. This is admitted, and this suit is to remove the obstruction.

"A temporary permit to one who is building a house on the side of a street to pile building material in the street to the extent of stopping travel until it can be worked into the

building does not cause the street to cease to be a public highway.

[5] "The temporary permit granted to the railroad company in this case and the temporary cessation of travel thereon did not destroy its character as a public street and highway, and when the railroad company continued to obstruct it after the permit was withdrawn it became a trespasser, to all intents and purposes, as it would have been if it had in the first instance obstructed the street without permission of the trustees.

"It is an astonishing condition of the law in this state, if true, that if a railroad company puts a fence across one of the streets of a city without permission, no court can entertain a suit to have it removed, but the city must let it remain there until the Railroad Commission in its discretion orders it removed. Of course, in fairness to counsel it is proper to say that he would not and does not make such a claim, but it seems to the court that the position taken when pushed to its logical results leads to the above.

"In *Civic Center* v. *Railroad Com.*, 175 Cal. 453, [166 Pac. 356,] the following language is used which I think is the law controlling the point now under discussion in this case:

" 'The city of Los Angeles has the power to open, widen, extend and improve streets, and to regulate the ordinary use thereof. The Railroad Commission has the power to make orders, which are *binding upon railroad companies* under its supervision, to abolish grade crossings of the public streets of a city, and to order a separation of grades, so that railroads and streets shall not be upon the same level. It cannot vacate the streets or direct a cessation of the public use thereof.'

"This decision was rendered after the action of the commission as set forth in the answer, and is in conflict with its views upon the matter under consideration.

"The court is of the opinion that the 'Second Defense' set forth in the answer does not state a defense to the action."

To the quotation from *Civic Center* v. *Railroad Com.*, 175 Cal. 441, [166 Pac. 355], may be added the following from *City of Los Angeles* v. *Central Trust Co.*, 173 Cal. 327, [159 Pac. 1170] : "The opening, laying out and improvement of streets within a city, and the regulation of the manner

of their use are matters of much greater concern to its inhabitants than to the people of the state at large, and they are clearly municipal affairs, the control of which has always been deemed within the proper scope of municipal powers.'' It was further held therein that this power ''includes the power to open a street across an existing railroad as well as anywhere else within the city, and to regulate the operations of the railroad at such crossing as well as elsewhere,'' and, also, that in reference to these matters—being a municipal affair—the provisions of the charter on the subject are ''paramount and supersede general laws which would otherwise apply thereto, so far as operations within the city are concerned.'' It is true that the city of Los Angeles operates under a freeholders' charter, but the corresponding provisions in the municipal act governing the city of Red Bluff in relation to the streets are of similar import to those affecting Los Angeles, and they should be subject to the same interpretation and application.

But, after all, as I view it, the case is substantially the same as though appellant had constructed its tracks across an existing street, so as to obstruct and prevent the use of said street, in the accustomed way, by the public. Said contract with the city does not affect the situation. It may be doubted whether the trustees could enter into such a contract, so as to bind the public, but, assuming its validity, it operated to grant only a temporary privilege, and it was subject to withdrawal at any time. [6] We have, therefore, essentially an obstruction to an established highway; in other words, a public nuisance, and there is no doubt of the jurisdiction of the superior court to abate such a nuisance. The situation does not involve such regulation of a crossing as the law has delegated to the cognizance and authority of the Railroad Commission. It may be granted that, if said commission had found upon conflicting evidence that no such obstruction existed, the courts would be bound by such finding, but that situation is not presented. Indeed, the conclusion of the commission goes upon the assumption that, by reason of said tracks, the street was rendered impassable to ordinary vehicles.

Attention is called to certain decisions from other jurisdictions seemingly holding to a contrary view to that of the

trial judge herein, but the facts therein clearly distinguish them from this case.

In *New York & N. E. R. Co.* v. *City of Waterbury*, 55 Conn. 19, [10 Atl. 162], the highway was not constructed and the defendant undertook to complete it across the plaintiff's railway at grade. This was in 1886 and it was in direct violation of the statute passed by the legislature in 1883, [Laws 1883, c. 107, sec. 2], providing "that hereafter no new highway shall be constructed across any railroad at grade." No question of an obstruction of a highway already constructed was involved. In referring to the statute the court said: "It means that although a highway may have been previously laid out, partially constructed and even built upon, if it has not *actually* been completed for public use across the rails of the railway, such crossing shall not thereafter be made."

In *Paterson & R. R. Co. et al.* v. *Mayor et al. of City of Paterson*, 81 N. J. Eq. 124, [86 Atl. 68], the highway had not been constructed, but simply "laid out on paper," and the principal question to be determined by the court was whether this amounted to a construction of the highway within the contemplation of the statute providing that "no highway shall be constructed across the tracks of any railroad company at grade . . . without first obtaining therefor permission from the board" of public utility commissioners. The court very properly held that the highway was not constructed and that the case fell within the provisions of said law.

*New York Cent. & H. R. R. Co.* v. *City of Buffalo*, 200 N. Y. 113, [93 N. E. 520], involved also the construction of a new street across a railroad track already built, and the court held that the case was governed by the statute, [Laws 1897, c. 754 sec. 1], providing that "when a new street shall be constructed across a steam surface railroad, the street shall pass over or under the railroad or at grade as the board or railroad commissioners shall direct."

I think the judgment should be affirmed, and it is so ordered.

Hart, J., concurred.

PLUMMER, P. J., *pro tem.*, Dissenting.—As I have not reached the conclusions expressed in the majority opinion of

the court, and the questions involved being close and not heretofore definitely settled, I herewith state the case as it appears to me.

On the thirteenth day of May, 1902, the town, now the city, of Red Bluff, a city of the sixth class, upon the request of the division superintendent of the Southern Pacific Company, adopted a resolution closing Cedar Street in the town of Red Bluff, the material portions of which resolution are as follows:

"Whereas, it appears to this Board that the use of said Cedar street at the place mentioned in said communication is rendered dangerous and unsafe for public use and travel by reason of the great use thereof by the engines and trains of the Southern Pacific Company; and whereas it further appears to this Board that the temporary closing of said street would not be detrimental to the best interests of the town of Red Bluff and of the citizens thereof; and whereas it further appears . . . that it is now quite important for said company to complete the building now in course of construction and mentioned in said communication as the boiler house, it is therefore hereby ordered that the said Cedar street, between Madison street and Monroe street, in the town of Red Bluff be, and the same is hereby temporarily closed to public travel, and that the Southern Pacific Company be granted permission to complete and occupy the said boiler house, and that said Company be permitted also to occupy and use the said Cedar street, so closed as aforesaid, for the purpose of carrying on its railroad business, and until the further order of this or some future Board of Trustees of the town of Red Bluff; provided, and this permission and use shall be and they are upon the express condition that the title to the said street thus closed to public travel shall be and remain in the public as a street and highway, and that no permanent rights therein are hereby granted and the said Southern Pacific Company or its successors in interest, shall not by use or adverse possession acquire any title thereto as against the public or the town of Red Bluff."

It appears from the transcript that after the passage of this resolution the crossing over the railroad tracks of the defendant company on said street were torn out, the building mentioned as the boiler-house completed and used for a

number of years, and that prior to the institution of proceedings for the reopening of said street a number of additional tracks were constructed by the defendant company across said street, and that at the time of the trial herein there were existing and being maintained and used by the defendant company eight different tracks across Cedar Street, two of which were and are used as switching leads to an additional number of tracks not mentioned.

It also appears that the boiler-house has been removed, but that since said thirteenth day of May, 1902, no crossing has existed on said street over the tracks of the defendant company, and the same are not so constructed as to permit the passage of vehicles or ordinary traffic.

It further appears that on or about the second day of March, 1917, the city of Red Bluff filed with the Railroad Commission of the state of California an application praying for the reopening of said street to public travel, and for an order requiring the railroad company to repair its tracks and place the same in condition, to the intent that they might be crossed by vehicles, persons, etc. That thereafter a hearing was had before the Railroad Commission, which commission, after due investigation, came to the conclusion that while the opening of said street across said railroad would afford convenience to some traffic, it was not great enough to offset the hazard that would be incurred by the construction of a crossing over said defendant company's tracks. Said commission also found that there was no crossing over the tracks of said defendant company at Cedar Street, and that there had not been any such crossing for many years, and at no time since the passing of the Public Utilities Act by the legislature of the state of California in 1911, and that section 43 of said act applies to this case wherein it provides that "No public road, highway or street shall hereafter be constructed across the track of any railroad corporation at grade . . . without first having secured the permission of the commission," and thereupon entered its judgment denying the petition of the plaintiff, and declining to order the defendant company to construct a crossing across its tracks on said Cedar Street. No rehearing was asked for before the commission, and the matter was not carried to the supreme court by writ of review or other proceeding. Following the conclusion of the proceedings

above referred to, this action was begun to obtain a judgment
for the removal of the tracks of the defendant company across
said street, on the ground that they constituted an unlawful
obstruction and a public nuisance.  The trial court adjudged
the tracks belonging to the defendant, as they are now con-
structed and maintained across Cedar Street, to be a public
nuisance, ordered the nuisance abated, and also ordered the
defendant to so construct and maintain its said tracks across
said Cedar Street that the same may be used by vehicles and
teams, conveyances, and by the public generally as a public
street and highway.

The question tendered for decision is one purely of juris-
diction.  If the Railroad Commission had jurisdiction, its
judgment is conclusive and final under the provisions of sec-
tion 65 of the Public Utilities Act.  If it had no such juris-
diction, then the superior court had a right to maintain the
action which is now before this court upon appeal.

At all the times herein mentioned the plaintiff was, and
now is, a municipal corporation of the sixth class, subject
to the general laws of the state of California, and is not
exercising any powers or authority under a freeholders'
charter as provided by sections 6 and 8 of article XI of the
state constitution, and may exercise only the powers reserved
to cities and towns by section 23 of article XII of said con-
stitution, as follows: The enforcement of local, police, sani-
tary, and other regulations, other than the fixing of rates
ordinarily vested in cities and incorporated towns.  Upon
this provision of the constitution, section 2694 of the Political
Code, and the case of the *City of Los Angeles* v. *Central
Trust Co.*, 173 Cal. 323, [159 Pac. 1169], and *Civic Center
Assn. of Los Angeles* v. *Railroad Com.*, 175 Cal. 441, [166
Pac. 351], the plaintiff bases its argument for the court's
jurisdiction.  In the former of these cases it is held that the
laying out and improvement of streets within a city are
matters of much greater concern to its inhabitants than to
the people of the state at large, and are municipal affairs,
the control of which has always been deemed within the
proper scope of municipal powers.  An examination of that
case shows that the municipal charter of Los Angeles, adopted
in accordance with section 6 of article XI of the state con-
stitution, controlled the decision, as it was held that the city
charter of said city was paramount to general laws in respect

to municipal affairs. The concurring opinion in that case foreshadowed the development of the law touching the question of what was and what was not a municipal matter, and so in the case of the Civic Center Association we find the supreme court holding that the matter of railroad crossings in cities, the building of viaducts or subways, etc., are not municipal affairs, but are matters of general state concern, the language of the court being: "We are of the opinion that they come within the latter designation (Matters of General State Concern); that they are not properly municipal affairs, but always have been and still are affairs properly to be controlled and regulated by state authority within, as well as without, any particular municipality." It is further held that where the railroad is entirely within the city, then such matters are purely municipal. But where the railroad in question is a part of a system connecting distant cities and states, then it does not come within such designation, because they serve the people at large, and are the means of communication between distant centers, and that it is not to the best interest of the state to leave them subject to the exclusive and unlimited control of every city through which they may pass, with respect to construction, maintenance, and operation of the lines lying within such city, the conclusion being reached in that case that it was the right of the legislature, under the constitution, to commit the regulation of such railroads, so far as they operate within cities, to the exclusive control of the Railroad Commission; that such matters cannot be classed as a municipal affair, but as matters of general concern, and the legislative declarations on that subject are paramount to any city charter. This conclusion, as stated in that case, leaves the cities free to lay out streets and regulate the ordinary uses thereof, but instead of leaving cities free to exercise control when it comes to the railroad crossing of any street as urged by counsel in this case, it seems to us to expressly limit the power of the city to opening and controlling streets in the ordinary use thereof except where they cross a railroad system, such as is involved in this action.

In the case at bar it is proposed to construct a crossing where there now exists eight railroad tracks, including a main line upon which overland trains are operated, which certainly involves a matter of much concern to the entire

state, in this, as stated in the resolution closing the street in the first instance, and as found by the Railroad Commission in the second, it would involve a matter of much hazard and seriously interfere with the operation of trains. The ability to handle cars quickly and without delay at switching centers is a facility of utmost importance to the uninterrupted transportation of freight and passengers. It may be stated that the increased hazards where so many tracks are involved, and the question of settling damages for accidents occurring at such places, are matters of general state concern, as such items must necessarily enter into the question of fixing freight tariffs and passenger fares.

Section 2694 of the Political Code, referred to in the second subdivision of section 43 of the Public Utilities Act, and incorporated therein so far as applicable, is a provision relating to procedure, and is not a limitation upon the power of the Railroad Commission granted in the first subdivision of that section. When the permission of the Railroad Commission has been granted to construct a crossing over a railroad, then the procedure set out in the section of the Political Code referred to is to be applied.

It is not necessary to express any opinion as to the validity or regularity of the resolution passed by the board of trustees of the town of Red Bluff, but it seems to me, from a careful study of its entire context, that the word ''temporary,'' therein used, was not intended to be used in the limited sense, and should not be held to have been used in the sense in which that word is ordinarily employed when granting a permit to use a portion of a street for building purposes. In such instances, when the purpose for which the grant is made has ceased to exist, the grant itself may properly be held to have expired. The whole resolution seems to show that the purpose and intent of the board of trustees was an indefinite abandonment or relinquishment of a portion of Cedar Street for railroad purposes, saving and reserving to the city simply the legal title to a right of way across the premises involved for street or highway purposes. The thought seems to have been to exclude the idea only of a perpetual grant, the draftsman of the resolution apparently having overlooked the fact that as against the police powers of the state the railroad company could not have acquired any legal title by any adverse claim.

It may be further stated that the very nature of the use contemplated a considerable period of time, and was to reach over and extend into the future until the growth of the city created a necessity for a public crossing. It is thus apparent that while a highway as a fiction of law has existed over the tracks of the company, no highway and no crossing have been there since 1902, and did not exist as a fact in 1911, when the Public Utilities Act was passed by the legislature.

It also appears from the transcript that a number of tracks have been laid across Cedar Street, over which *no crossing has ever existed.* Under these circumstances, I think that the holding of the Railroad Commission that section 43 of the Public Utilities Act, immediately applied upon its enactment, was correct. Over all the tracks laid since 1902 it is unquestionably the construction of a new crossing, and over the tracks that existed on and prior to 1902 it is the construction of a new crossing on the old site. Nothing in the Public Utilities Act limits the right of a town or city to lay out, ordain, and establish streets and highways, so far as all the legal steps leading up thereto are necessary to be taken. But when this has been done, section 43 of the act lays hold upon the physical property and gives to the Railroad Commission jurisdiction to manage, direct, and control, through its orders to the railroad company, as to what shall be done with the physical properties. The city exercises its legal prerogatives; the Railroad Commission directs the exercise of the physical activities, and this, I think, is what the word "constructed" means as used in the Public Utilities Act.

While no California cases upon the precise questions here involved have been called to our attention, in the states of New Jersey, Connecticut, and New York, having a Public Utilities Act of like wording with our own, we find decisions directly in point.

In *Paterson & R. R. Co.* v. *Mayor etc. of City of Paterson,* 81 N. J. Eq. 124, [86 Atl. 68], the court of chancery holds: "That the construction of a highway within the act of April 21, 1911, providing that no highway shall be constructed across railroad tracks at grade without first obtaining permission therefor from the board of public utility commissioners, contemplates such grading, curbing, flagging, planking, or other physical alteration or addition as may be

necessary to prepare it for use, and the highway is not constructed by simply laying it out on paper and filing a map, since construction implies performance of work; the fitting of an object for use or occupation in the usual way, and for some distinct purpose; to put together the constituent parts; to build, to fabricate; to form and to make, and hence that section applies to a railway crossing laid out by ordinance, but not physically constructed prior to its enactment.''

In the Paterson case a street had been opened some time prior to May 20, 1908, in the city of Paterson, extending to the line of the Erie Railroad Company; a right of way had been acquired across the railroad premises, but no crossing had been constructed as a physical fact when the Public Utilities Act went into effect. The act there, as here, provided that no highway shall be constructed across the tracks of any railroad company at grade . . . without first obtaining therefor permission from the board. The question to be decided was, Did the act apply under such circumstances? The court answered in the affirmative, holding that the construction meant the physical work and was under the jurisdiction of the utility commission, the consent of which must first be had, even though the highway had theretofore been created as a matter of law.

In the case of *New York & N. E. R. Co.* v. *Waterbury*, 55 Conn. 19, [10 Atl. 162], having a similar act, the court held ''that the statute rendered the construction of a grade crossing illegal, although the highway had been laid out and was partially constructed before the passage of the act.'' In considering the statute the court said: ''It means that although a highway may have been previously laid out, partially constructed, and even built upon, if it has not actually been completed for public use across the rails of the railway, such crossing shall not thereafter be made.''

The court further said: ''This peremptory arrest of the completion of a highway lawfully commenced is a seeming interference with the rights of individuals and of the public, but only is seeming; in fact, such crossings are public nuisances, dangerous to human life, and no man has a vested interest in the creation or continuance of such a nuisance.''

In *New York Cent. etc. R. R. Co.* v. *City of Buffalo*, 200 N. Y. 113, [93 N. E. 520], the court of appeals, in an action brought to enjoin the city of Buffalo from the physical con-

struction of a crossing over a railroad which had been laid out, and the right to construct the crossing having been obtained some years before the passage of the utility act, but the work not having been in fact done, held: "That the city should be enjoined from extending the street or avenue across the tracks of the railway company until it had secured the determination by the Public Service Commission as to whether such avenue should be constructed over or under said railroad or at grade, and the manner in which such crossing should be constructed, thus declaring the paramount jurisdiction of the Public Service Commission over a situation which had been created before its establishment, and holding that the municipal corporation had not acquired any vested right as against the subsequently declared public policy of the state."

In the state of Pennsylvania, where the Public Utilities Act reads: "All crossings hereafter established," etc., a different ruling has been made.

In *Ligonier Valley R. R. Co.* v. *Latrobe,* 216 Pa. 221, [65 Atl. 548], the court held: "That inasmuch as the highway, including the crossing, had been laid out and established before the statute of 1901 was passed, the statute did not apply."

In speaking of this case, the New Jersey court expressly disavowed the reasoning of the Pennsylvania court unless there was a clear distinction between the word "construct" and the word "establish."

An examination of the definitions of the word "establish," as found in 16 Cyc. 591, shows that this distinction may very properly be drawn, as the words "construct" and "establish" are much different in their applications. The word "establish" includes the idea to institute, to ordain, to pass, to decree, to enact; to enact or decree by authority, etc. It is also there further stated, after giving a number of additional definitions, that there are few words which furnish more room for argument than the word "establish." The word "construct" or "constructed," as found in the New Jersey, Connecticut, New York, and California statutes, has a definite and distinct meaning, and, as stated by the New Jersey court, refers specifically to the putting together of the materials or constituent elements constituting the physical crossing itself.

In line with the decisions of the courts which I have cited, I think it should be held that the Public Utilities Act laid hold upon the physical properties belonging to the railroad companies just as it found them on the day the act became effective, and that jurisdiction then vested exclusively in the Railroad Commission over all questions involved in this action.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 5, 1920.

All the Justices concurred.