THE COURT.
This is an appeal from a judgment of conviction of the defendant on a charge of violation of the Code of Fair Competition for the Barber Industry adopted in this state under the authority of the Supplement to the California Industrial Recovery Act (Stats. 1933, p. 2632). The specific accusation is that on January 11, 1934, the defendant unlawfully made a charge of only 35 cents for cutting the hair of an adult instead of 65 cents, alleged to be the legally established price under said code for such service in the San Francisco area.
The California Industrial Recovery Act (Stats. 1933, p. 2637) is designed to make codes and trade agreements established under the National Industrial Recovery Act applicable to intrastate commerce; and the supplement, with a view to promoting the rehabilitation of trade and industry and eliminating unfair competitive practices in this state, establishes rules in relation to the structure, approval and enforcement of codes of fair competition to be adopted by trade or industrial groups or associations.
The general administrative control over such codes is reposed in the chief of the division of corporations, ordinarily called the corporation commissioner; and codes framed in conformity with the law may be approved by him, provided he finds, among other things, that the codes are not designed to promote monopolies or to eliminate or oppress, or discriminate against, small enterprises, and that they will tend to effectuate the policy of the act. The commissioner is authorized in his discretion to impose conditions for the protection of consumers, competitors, employees and others, as well as to amend codes on application from time to time; and also to make and promulgate rules and regulations in furtherance of the administration of the law for accomplishment of the purposes contemplated. It is expressly provided, however, that the commissioner shall not approve any code, .or make or promulgate any rule, and likewise that no code shall become effective, without the concurrence in writ *Supp. 748 ing of the director of the department of industrial relations.
It is made unlawful for any person subject to a duly approved code to fail of compliance with its terms; and any person violating any provision of the act, or any rule or regulation promulgated by the commissioner thereunder, is chargeable with a misdemeanor, and becomes subject for each violation to punishment by fine or imprisonment or both.
The act is specifically declared to be an emergency measure, with its life limited to a period of two years from the date of its enactment, unless the emergency should sooner be declared at an end in a proclamation by the governor.
No question is raised here as to the constitutionality of the law.
Under the act, a Code of Fair Competition for the Barber Industry of the state was submitted to the commissioner; and after being approved by him, and concurred in by the director of the department .of industrial relations, the code became effective on November 2, 1933'.
To establish an agency for supervising and promoting the due operation of the code, provision is made therein for a governing board of five members, whose powers and duties are specified, and whose regulations are to be subject to the approval of the commissioner: The board is made the representative of the industry to confer with the commissioner in matters pertaining to the code, and to consider and initiate amendments to be submitted for approval. The commissioner, on his own motion, however, may call a hearing for the purpose of determining whether an approved code shall be modified, suspended or revoked. In like manner, the supplement itself in section 3 authorizes the commissioner upon application to amend a code, when the amendment is in the public interest and in accord with the purposes of the act.
The code embodies also declarations concerning the rights of employees together with regulations regarding wages and hours. There are likewise specifications of unfair trade practices; and in this connection article X deals with the subject of “Services Below Cost”. That article provides as follows:
*Supp. 749 "Section 1: It shall be an unfair method of competition and a violation of this code for any owner or operator of a barber shop to allow the performance of services in his shop or perform such services for a price less than cost plus not less than 15% thereon for each service performed on a patron or customer.
“Section 2: ‘Cost’ as used herein shall be defined as the actual costs of each service rendered by a barber to patrons as ascertained from considering every item of overhead expense, plus labor expense, plus depreciation on equipment and plus interest on the capital invested.
“In computing ‘cost’ in the case of a ‘one-man chair’ barber shop, the proprietor shall include in such ‘cost’ a minimum of $20 per week as an item of wages.”
By Article VII it is made the duty of operators of barbershops, in order to provide data for administrative purposes, to keep adequate books of account exhibiting their gross income and the items entering into the cost of operation, such as wages, expenditures for supplies, all overhead charges, and the capital investment. Reciprocally it is made the duty of the governing board to collect, compile, disseminate and distribute such data, trade information and statistics as are reasonably pertinent to the effectuation of the act. To assist in procuring and disseminating such data, the board is authorized to adopt and establish a uniform accounting system for use in the shops.
Upon the approval of the code, a combined constitution and set of by-laws of the governing board was adopted by the board on December 9, and approved on December 26, 1933. The sections of the code concerning collection of data and statistics and the establishment of a uniform accounting system are repeated in the constitution and by-laws, as is also the subdivision relating to amendments of the code.
In addition to the powers conferred by the code, the governing board is authorized to divide the state into such regions or local areas as will tend to facilitate the administration of the code; and power is given to establish in such subdivisions subcommittees or subgoverning boards, the action of which shall be submitted to the governing board for its approval subject to review by the commissioner. In re *Supp. 750 gard to prices to be charged for service, section 2 of article X of the constitution and by-laws provides as follows:
“The Governing Board, either through themselves, or the Sub-Committees provided for, shall make a full fact-finding investigation in the various trade areas for the purpose of determining a minimum price for the various services pertinent to the barber industry, said price to be such as to guarantee the hours, wages and working conditions as set up in the Code of fair competition for the employees of this industry and all legitimate costs pertaining to the industry, plus a profit of not less than fifteen (15) per cent, and all subject to the approval in writing of the Administrator. Said price shall be determined in each area as a minimum for that area when at least eighty (80) per cent of the employing barbers in said area substantiate and approve such minimum price.”
The combination of constitution and by-laws was approved by the director of the department of industrial relations on December 23d, and was filed that same day with the corporation commissioner. On December 26th the commissioner approved what was so filed, but with certain conditions and reservations. One such condition was that nothing contained in his statement of approval should operate in any way so as to conflict with or vary “The Code of Fair Competition for the Barber Industry of the State of California, effective November 2nd, 1933”.
He stated further:
“Any schedule of prices that may be adopted in any one or more trade areas in accordance with said Code shall be first established by a local committee in the area affected and thereupon submitted in writing to the Governing Board. Upon said schedule receiving the written approval of the Governing Board after an affirmative finding that said schedule will tend to effectuate the purposes of the Act and the Code, a verified copy of said schedule together with the said finding and approval shall be forthwith filed with the Administrator by the Governing Board. In the absence of disapproval by the Administrator in writing said schedule shall become effective at the date therein fixed. Upon so becoming effective said schedule shall apply to the industry *Supp. 751 within the area designated and shall, however, be at all times subject to the existing Code of Fair Competition.
“The administrator expressly reserves the right to amend, modify or repeal said schedule in whole or in part without notice or hearing if it appears to him in the public interest so to do.”
It will be observed that nowhere either in the code or the constitution and by-laws is any specific price named for any class of service. Both speak in general terms, stating that the price of each service performed shall represent the cost plus not less than 15 per cent thereon; and there is nothing in the record in this case to indicate that when the commissioner approved conditionally the constitution and bylaws, he had before him any schedule of prices whatsoever.
However, on December 27th, the subgoverning board for the San Francisco trade area submitted to the governing board a recommendation in the following form:
“To the Governing Board, Code of Fair Competition for the Barber Industry of California
“We, the undersigned sub-committee for the San Francisco area, having circularized the barber industry for said trade area, and having voluntarily secured the signatures of more than 80 per cent of the employing barbers, hereby recommend that the Governing Board establish the following prices for the San Francisco trade area:
“Shave ....................................25c
“Haircut ..................................65c
“Children’s haircut (under 12 years of age)..50c
“Ladies’ neck trim..........................40c
“These prices to be in full force and effect on and after Friday, December 29, 1933.”
This recommendation was signed by the members of the subgoverning board; and under date of December 27, 1933, it bears the signatures of the members of the governing board approving the schedule.
There was no evidence of any affirmative action by the commissioner at any time in relation to this schedule, nor was there any evidence at the trial that the schedule had received “the written approval of the Governing Board after an affirmative finding that said schedule will tend to effectuate the purposes of the Act and the Code”.
*Supp. 752 After the appeal had been argued, a motion was made in this department on behalf of the people to admit a certificate of the secretary of the governing board, said to have been filed with the commissioner on January 9, 1934, two days before the offense charged against the defendant. This certificate (omitting the notarial jurat affixed below the secretary’s signature) is in the following form:
“I, the undersigned, herewith certify that the Governing Board, Code of Fair Competition for the barber industry of California, has this day, Wednesday, December 27, 1933, verified the signatures secured by the sub-committee, appointed by the Board for the San Francisco trade area, and found that statistics show that the prices contained in the attached schedule will tend to effectuate the purposes of the act and the Code.
“'Signed this 27th day of December, 1933.
(s) “Ros Mannina
“Secretary to the Board.”
It is doubtful whether a certificate in this form by the secretary would be deemed by the commissioner sufficient as the “affirmative finding” of the governing board with which he directed “a verified copy of said schedule” to be accompanied. Aside from that question, however, we are of the opinion that upon an appeal in a criminal cause, this department has not the power to receive, for the purpose of sustaining a conviction, material evidence which the accused had no opportunity to meet when on trial. The extent of the power of the superior court on appeal in a criminal case is fixed by section 1469 of the Penal Code, and is much more restricted than on an appeal in a civil case, wherein pursuant to section 988i of the Code of Civil Procedure additional evidence may be received. The motion to introduce new evidence is therefore denied.
At the same time, we are of the opinion that even with such additional evidence, the judgment of conviction could not be sustained.
Under the code of fair competition a violation of law in respect of service charges results only when the price charged by the individual barber is “less than cost plus not less than 15% thereon for each service performed on a patron or customer”; and the method for determining the *Supp. 753 minimum price for each owner or operator is defined. Furthermore, the constitution and by-laws contain a mandate to the governing board to conduct, or cause to be made, “a full fact-finding investigation in the various trade areas” for the purpose of determining “all legitimate costs pertaining to the industry plus a profit of not less than fifteen (15) per cent, all subject to the approval in writing of the Administrator”. Such price in each area is to be determined “when at least eighty (80) per cent of the employing barbers in said area substantiate and approve such minimum price”. That provision is not altogether in accord with the code itself, which in article X makes the standard of fair competition the cost of the particular service to the individual barber plus the prescribed profit.
If the provision in the constitution and by-laws was meant to be a modification of the code, it never became effective as such, because the commissioner expressly reserved approval of anything therein that would in any way conflict with, or vary the terms of, the code itself. And without the commissioner’s approval there could be no amendment or modification of the code. For practical purposes it may be conceded that a figure closely approximating the cost of each class of service in any particular area could be ascertained by a “full fact-finding investigation”; but the prices fixed on such basis would still require the written approval of the commissioner. And we conceive that the establishment of a minimum price, when at least 80 per cent of the employing barbers in a given area substantiate and approve such minimum price, is to be predicated on the data and statistics to be compiled from the accounts kept according to the system prescribed by the governing board. In other words, the regulation is not satisfied by a schedule of prices recommended by a subgoverning board after “having circularized the barber industry in said area and having voluntarily secured the signatures of more than 80 per cent of the employing barbers”.. A fact is substantiated when it is established by competent evidence; and circularizing is not substantiating.
According to the code, the minimum charge for each service is the cost plus at least 15 per cent. In the schedule the price for a shave is set at 25 cents and for a haircut *Supp. 754 at 65 cents. Whether the statistics contemplated would show those prices to be in accord with the rule of the code as to each such service, or would objectify a design to offset a loss in one sort of service by an extra profit in another, must be left to conjecture. But whatever the statistics might show, the adoption of the schedule would constitute an amendment or modification of the code; and to effect such change the approval of the commissioner would be an indispensable requirement.
It is urged, however, upon behalf of the People, that the approval of the commissioner is to be implied. And attention is directed to the passage in the commissioner’s letter of approval of the constitution and by-laws, where, in reference to any schedule of prices submitted by the governing board with their required affirmative finding, he spoke thus: “In the absence of disapproval by the Administrator in writing; said schedule shall become effective at the date therein fixed. Upon so becoming effective said schedule shall apply to the industry within the area designated and shall, however, be at all times subject to the existing Code of Pair Competition.”
It is quite clear from this declaration that no schedule tending to modify the code was intended to be treated as even constructively approved. Moreover we are of the opinion that the commissioner’s approval, when requisite, must be affirmatively expressed upon the records. The word “approve” means to sanction officially, to ratify or confirm. In Cosner v. Board of Supervisors of Colusa Co., 58 Cal. 274, 277, it is said: “The word 'approve’ is to be considered in connection with the action to which it relates. It does not ex vi termini necessarily import the exercise of discretion. Presumptively, however, when the ‘approval’ of a distinct officer is made necessary to validate or consummate the act of another, it is the intention of the Legislature that he should be invested with the option to sanction officially or to disapprove the act submitted to him. It involves the idea of discretion and adjudication."
The duty imposed on the commissioner under the statute is not a mere ministerial or clerical duty. He is set up as the chief administrator “for the protection of consumers, competitors, employers, and others, and in furtherance of the public interest”. The patrons of the barbers as well as the *Supp. 755 master and journeyman barbers themselves have the right to the commissioner’s best judgment on the data and statistics put before him, and to have that judgment expressed in definite and permanent form. Especially is formal evidence of approval essential, if approval is a factor determinative of guilt. With the change of a few words the following passage from the opinion in New York & N. E. R. Co. v. City of Waterbury, 55 Conn. 19, 23 [10 Atl. 162], might almost be said to have been written for the present case. The court there said:
“Whenever, either by constitutional or legislative requirement the president of the United 'States, the governor of a state or the mayor of a city is required to approve an act of congress, or of a legislature, or of a court of common council, the word ‘approve’ means more than the unexpressed mental acquiescence of the individual in the propriety of what has been done; it means that the officer, in his official capacity, as the guardian of the interests of a community, having in view its welfare, and not his personal wish or advantage, shall consider the proposed legislation and determine that it is proper, and make that fact known to all men with absolute certainty, by some visible, unmistakable and enduring mark, to wit, by written declaration attested by his signature. It is not enough that in the future when the question is made—is such an act of congress, of legislature or of common council binding upon the country, state or municipality, that it should depend for decision upon the memory and testimony of an officer as to what was his unexpressed thought, at a former time, concerning it. Such uncertainty would be unendurable, and, therefore, we must assume it to be outside of the meaning of any constitution or law.”
There is no proof of what the cost of haircutting in defendant’s shop was; and in the absence of any schedule of prices in the Code of Fair Competition, there can be no presumption of criminality in the naked fact of a charge of 35 cents.
In the Matter of Rosenthal, 135 Cal. App. 724 [27 Pac. (2d) 794], the petitioner, who was released from custody by virtue of a writ of habeas corpus, had been arrested on a charge of violation of the code for the cleaning and dyeing industry, in that he charged only 75 cents for cleaning a *Supp. 756 man’s suit when the price fixed by a vote of the trade association of Alameda County was $1.
In discharging the petitioner the court said: “The statute in question contemplates that the commissioner of corporations shall approve all the provisions of the code, which approval is to be concurred in by the director of the department of industrial relations. There was no schedule of prices included in the code approved by the commissioner or director. There was, therefore, no violation of any of the provisions involved. Since the arrest of petitioner a code of fair competition which fixes the schedule has been approved under the act of congress. Prom what has been said it follows that the petitioner should be and he is discharged from custody and his bail exonerated.”
Being confronted with a similar situation here, we conclude that the judgment of conviction of the defendant must be reversed on the following grounds:
1. There was no schedule of prices approved pursuant to law, whereby the price of a haircut for an adult in the San Francisco area was fixed at 65 cents.
2. The code of fair competition was not amended or modified so as to include therein any schedule of prices.
3. Inasmuch as no schedule of prices was incorporated in the code, or otherwise legally approved, and inasmuch as there was no proof that defendant’s charge was less than the cost to him of the service performed plus not less than 15 per cent, the defendant was not guilty of the charge of violating the Supplement to the California Industrial Recovery Act or the Code of Pair Competition for the Barber Industry.