[No. C004771. Third Dist. May 30, 1991.]

CATHERINE HOLTHOUSE MANGINI et al., Plaintiffs and Appellants, v. AEROJET-GENERAL CORPORATION et al., Defendants and Respondents.

## COUNSEL

McCutchen, Doyle, Brown & Enersen, Christopher Berka, Edward L. Strohbehn, Jr., and Jennifer S. Rosenberg for Plaintiffs and Appellants.

Lasky, Haas, Cohler & Munter, Moses Lasky and Janet Morgan for Defendants and Respondents.

## OPINION

**SIMS, J.**—In this case, we consider a variety of issues arising out of claims by owners of real property against parties who leased the property from prior owners and who allegedly contaminated the property with hazardous waste during the leasehold.[1]

---

[1]We are aware that the disposal of hazardous waste is subject to substantial regulation under federal and state law. (See, e.g., Comprehensive Environmental Response Compensation Liability Act (42 U.S.C. § 6901 et seq.); Clean Water Act (33 U.S.C. § 1251 et seq.); Safe

Plaintiffs Catherine Holthouse Mangini and Mark Vernon Holthouse, owners of 2,400 acres of land in Sacramento County, filed suit against Aerojet-General Corporation and its wholly owned subsidiary Cordova Chemical Company (hereafter collectively defendant), lessees of the property before plaintiffs acquired it, for allegedly contaminating the property with hazardous waste. Defendant's demurrer to the multicount complaint was sustained without leave to amend. Because we conclude some of plaintiffs' counts should survive demurrer, we shall reverse the judgment of dismissal.

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

The complaint, filed January 14, 1998, alleges the following material facts:

Defendant leased the property in question from its former owners, the Cavitts, from 1960 to 1970. Plaintiffs acquired the property pursuant to an exchange of other real property from the executor and administrator of the Cavitts' estate, codefendant James H. Cavitt, in 1975.[2]

Defendant's lease (attached to the complaint as an exhibit) provided, "The term of this lease is for a period of ten (10) years, commencing [in 1960] and

---

Drinking Water Act (42 U.S.C. § 300f et seq.); California Hazardous Waste Control Act (Health & Saf. Code, § 25100 et seq.); California Hazardous Substance Account Act (Health & Saf. Code, § 25300 et seq.).) The parties to this action make no argument that relief is either available or unavailable on account of the cited statutes. We express no view as to whether the cited statutes may either authorize or preclude the relief sought by plaintiffs in this action. (See generally, Hingerty, *Property Owner Liability for Environmental Contamination in California* (1987) 22 U.S.F. L.Rev. 31; Note, *Hazardous Wastes: Preserving the Nuisance Remedy* (1981) 33 Stan.L.Rev. 675.)

[2]Defendant James H. Cavitt is not a party to this appeal.

ending [in 1970] . . . ." The lease also stated, among other things, "Upon termination of this lease, Lessee shall surrender the premises in as good state and condition as when received by Lessee, reasonable use and wear thereof consistent with the business engaged in by Lessee . . . excepted."[3] Despite this provision, defendant failed to remove millions of pounds of waste rocket fuel materials and other hazardous substances which it burned, buried, or otherwise disposed of on the property during the term of its lease, creating hazardous conditions which remain on the property.

Plaintiffs have been compelled by the Sacramento County Air Pollution Control District to undertake testing of the property and may be required under state and federal law to abate the hazardous conditions created by defendant.

Plaintiffs did not learn of the hazardous conditions until "recently."

Based on these alleged facts plaintiffs pled nine "causes of action" against defendant:

Creation of a *public nuisance* (first count);

Creation of a *private nuisance* (second count);

*Negligence* (third count);

*Negligence per se*, based on the contention that defendant's activities violated Health and Safety Code section 25601 (requiring the safe disposal of radioactive waste), Water Code sections 13304, 13264, and 13265 (requiring the cleanup and abatement of waste discharges into the waters of the state, and prohibiting the discharge of any waste that could affect the quality of the waters of the state, including groundwaters), and Order No. 62-21 of the Regional Water Quality Control Board (requiring defendant to dispose of all waste discharges originating on its leased properties so as to avoid creating harmful concentrations of waste in usable groundwaters) (fourth count);

*Trespass*, based on the allegation that defendant wrongfully deposited harmful waste on the property and failed to remove the waste after plaintiffs acquired the property (fifth count);

*Strict liability* for ultrahazardous activities (sixth count);

---

[3]Other pertinent provisions of the lease are discussed below.

*Violation of Business and Professions Code section 17200* (prohibiting unfair or unlawful business practices) (ninth count);

*Equitable indemnity* for testing and cleanup costs incurred by plaintiffs at the direction of governmental entities (10th count); and

*Declaratory relief* with respect to the parties' obligations for testing and clean-up costs (11th count).

Defendant demurred to all the "causes of action" on the grounds they failed to state facts sufficient to constitute a cause of action and were barred by the statute of limitations. The trial court sustained the demurrer without leave to amend on those grounds. This appeal followed.

## DISCUSSION

## I

*The Complaint States a Cause of Action for Damages for Creation of a Nuisance*

A. *Plaintiffs may sue in nuisance for direct injury to their property.*

Defendant contends the complaint fails to state a cause of action for nuisance.

Defendant argues: "The critical fact of this case is that the claim of nuisance is being made by a present owner of property for alleged injury to that property resulting from acts of a defendant *committed on that very property*. This takes it entirely outside the area of nuisance. . . . In other words, conduct committed *on* a piece of land cannot be attacked as a nuisance to that land or the owner of it. Nuisances are committed by 'neighbors' to the land claimed to have been damaged. Apart from special statutory definitions of specific situations, to be assailable as a 'nuisance' the acts causing the claimed injury must be committed by someone outside the land. Otherwise, actionability of the conduct must be examined under the law of trespass." (Original italics.)

In support of this argument, defendant cites general treatises. Thus, for example, Prosser and Keeton remark as follows: "The distinction which is now accepted is that trespass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it. The difference is that between walking across his lawn and establishing a bawdy house next door; between felling a tree across

his boundary line and keeping him awake at night with the noise of a rolling mill. . . . [¶] As the term 'private nuisance' is used in this edition, the tort is committed only if, and in the absence of an intrusion on land amounting to an intentional entry and a trespass, . . ." (Prosser and Keeton, Torts (5th ed. 1984) § 87, p. 622, fn. omitted.)

Similarly, Wood on Nuisances (3d ed. 1893) states, "They [nuisances] are always injuries that result as a consequence of an act done outside of the property injured, and are the indirect and remote effects of an act, rather than a direct and immediate consequence. It is a species of invasion of another's property by agencies operating entirely outside of the property itself, . . ." (P. 33.)[4]

Defendant also relies upon *Philadelphia Elec. Co.* v. *Hercules, Inc.* (3d Cir. 1985) 762 F.2d 303, certiorari denied 474 U.S. 980 [88 L.Ed.2d 337, 106 S.Ct. 384], where the federal court applied Pennsylvania law to conclude that a successor owner of property could not sue a prior owner for nuisance because, inter alia, the historical role of private nuisance law was limited to a resolution of conflicts between neighboring contemporaneous land uses.[5] (Pp. 313-314.)

■ We cannot accept defendant's argument because, as we shall explain, the authorities on which it is premised do not correctly reflect California law. In particular, defendant fails to recognize that California nuisance law is a creature of statute. The California nuisance statutes have been construed, according to their broad terms, to allow an owner of property to sue for damages caused by a nuisance created *on* the owner's property. Under California law, it is not necessary that a nuisance have its origin in neighboring property.

The following provisions of the Civil Code are pertinent here (all further statutory references are to the Civil Code unless noted otherwise):

Section 3479: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

[4]Defendant also cites 58 Am.Jur.2d for the following: "[N]uisance is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property, . . ." (*Id., Nuisances*, § 2, at p. 672, fn. omitted.) Defendant also cites to 47 Cal.Jur.3d, Nuisances, section 1, page 199.

[5]Defendant also cites *Amland Properties Corp.* v. *Aluminum Co. of America* (D.N.J. 1989) 711 F.Supp. 784, a case that followed Philadelphia Elec Co. (*Id.* at p. 807.)

Section 3480: "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

Section 3481: "Every nuisance not included in the definition of the last section is private."

Section 3493: "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise."

Code of Civil Procedure section 731 (hereafter section 731) provides in pertinent part: "An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as the same is defined in section thirty-four hundred and seventy-nine of the Civil Code, and by the judgment in such action the nuisance may be enjoined or abated as well as damages recovered therefor."

Sections 3479 and 731 have their origin in section 249 of the Practice Act of 1851 (Stats. 1851, ch. 2, p. 92) which provided as follows: "Anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. Such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance; and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

Under the Practice Act, it was recognized that a property owner could sue for nuisance where miners entered the owner's property without consent and dug ditches that interfered with the free use of the property. (*Courtwright* v. *B. R. & A. W. & M. Co.* (1866) 30 Cal. 573; *Weimar* v. *Lowery* (1858) 11 Cal. 104; *Fitzgerald* v. *Urton* (1854) 4 Cal. 235.) In *Courtwright*, the court said, "A nuisance is defined by the statute (Practice Act, Sec. 249) as 'anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property.' This definition is perhaps more comprehensive than that given by Blackstone, (3 Black. Com. 216) which is 'anything done to the hurt or annoyance of the lands, tenements or hereditaments of another.' Injuries occasioned by wrongfully causing or permitting the water from water ditches to flow upon or over the lands or mining claims of others, have always been treated in this State as nuisances, and actions to prevent or abate such nuisances are of every day occurrence." (30 Cal. at pp. 575-576.)

More modern California cases have recognized that, "The statutory definition of nuisance appears to be broad enough to encompass almost every conceivable type of interference with the enjoyment or use of land or property." (*Stoiber* v. *Honeychuck* (1980) 101 Cal.App.3d 903, 919 [162 Cal.Rptr. 194]; see *People* v. *Stafford Packing Co.* (1924) 193 Cal. 719, 725-726 [227 P. 485].) Numerous cases have therefore sanctioned recovery on a nuisance theory for direct injury to a plaintiff's property.

Thus, for example, in *Phelan* v. *Quinn* (1900) 130 Cal. 374 [62 P. 623] it was held that defendant's obstruction of plaintiff's *private* road with a gate constituted a nuisance. (Pp. 378-379.) Similarly, in *Smith* v. *Smith* (1913) 21 Cal.App. 378 [131 P. 890], defendant's actual obstruction of a *private* alley was a nuisance. And in *Baldocchi* v. *Four Fifty Sutter Corp.* (1933) 129 Cal.App. 383 [18 P.2d 682] defendant was held liable for creation of a nuisance where they destroyed plaintiff's private sidewalk. (P. 388.)

California cases have also recognized that invasions of plaintiff's property, otherwise amounting to a trespass, may also constitute a nuisance under the statutes.[6] Thus, in *L. A. Brick etc. Co.* v. *City of Los Angeles* (1943) 60 Cal.App.2d 478 [141 P.2d 46], the city's discharge of water on to plaintiff's property was held to be both a trespass and a nuisance. (Pp. 485-486.) In *Griffin* v. *Northridge* (1944) 67 Cal.App.2d 69 [153 P.2d 800], the court found both a trespass and a nuisance where plaintiff's neighbors trespassed on plaintiff's property, destroyed flowers, and caused paint to be cast upon the walls and windows of plaintiff's home. (Pp. 71, 73, 76.) And in *Mattos* v. *Mattos* (1958) 162 Cal.App.2d 41 [328 P.2d 269], a nuisance was found where defendant's trees were blown down on plaintiff's property.

---

[6]This is also the view of the Restatement Second of Torts: "There may . . . be some overlapping of the causes of action for trespass and private nuisance. An invasion of the possession of land normally involves some degree of interference with its use and enjoyment and this is true particularly when some harm is inflicted upon the land itself. The cause of action for trespass has traditionally included liability for incidental harms of this nature. If the interference with the use and enjoyment of the land is a significant one, sufficient in itself to amount to a private nuisance, the fact that it arises out of or is accompanied by a trespass will not prevent recovery for the nuisance, and the action may be maintained upon either basis as the plaintiff elects or both. Thus the flooding of the plaintiff's land, which is a trespass, is also a nuisance if it is repeated or of long duration; and when the defendant's dog howls under the plaintiff's window night after night and deprives him of sleep, there is a nuisance whether the dog is outside the plaintiff's land or has entered upon it, and the defendant's negligence in looking after the dog would make him liable either for trespass if there was an entry or for nuisance whether there was entry or not.

"The two actions, trespass and private nuisance, are thus not entirely exclusive or inconsistent, and in a proper case in which the elements of both actions are fully present, the plaintiff may have his choice of one or the other, or may proceed upon both." (Rest.2d Torts, § 821D, com. e, p. 102; but see *Wilson* v. *Interlake Steel Co.* (1982) 32 Cal.3d 229 [185 Cal.Rptr. 280, 649 P.2d 922] [noise is nuisance but not trespass].)

Finally, the breadth of California's nuisance statutes is illustrated by *Stoiber* v. *Honeychuck, supra,* 101 Cal.App.3d 903. There, tenants were permitted to recover damages from their landlord on a nuisance theory for the defective condition of the rented premises.

These authorities make clear that the California statutes do not limit recovery for nuisance to instances where there is an offensive use of neighboring lands. Rather, the broad language of section 3479 sanctions recovery for direct injury to a plaintiff's property constituting "an obstruction to the free use of property." Defendant's contention to the contrary is not well taken.

B. *Defendant may be liable for having created the nuisance.*

██ Nor is it material that defendant allegedly created the nuisance at some time in the past but does not currently have a possessory interest in the property. "[N]ot only is the party who maintains the nuisance liable but also the party or parties who create or assist in its creation are responsible for the ensuing damages." (*Shurpin* v. *Elmhirst* (1983) 148 Cal.App.3d 94, 101 [195 Cal.Rptr. 737]; *Hardin* v. *Sin Claire* (1896) 115 Cal. 460, 463 [47 P. 363]; *Selma Pressure Treating Co.* v. *Osmose Wood Preserving, Inc.* (1990) 221 Cal.App.3d 1601, 1619-1620 [271 Cal.Rptr. 596] [designer and installer of chemical treatment facility liable for nuisance]; *Portman* v. *Clementina Co.* (1957) 147 Cal.App.2d 651, 659-660 [305 P.2d 963] [contractor who dumped fill and created nuisance would be liable in damages].)[7]

C. *Plaintiffs have alleged special injury sufficiently to allow them to sue for damages for public nuisance.*

██ Defendant contends plaintiffs "lack standing" to sue for public nuisance.

Defendant notes section 3493 allows a private person to maintain an action for public nuisance "if it is specially injurious to himself, . . ." "Generally speaking, a public nuisance does not furnish ground for action by a private person, but such public nuisance may inflict upon an individual such peculiar injury as to entitle him to maintain a separate action for its abatement, or to recover damages therefor. (Civ. Code, sec. 3493.) The injury to the individual must, however, be different in kind and not merely in degree from that suffered by the general public. [Citations.]" (*Brown* v. *Rea* (1907) 150 Cal. 171, 174 [88 P. 713].)

---

[7]These authorities refute defendant's assertion, unsupported by authority that "one cannot be guilty of committing a nuisance unless it [*sic*] is in the position to abate it."

Defendant argues plaintiffs have failed to allege special injury. However, plaintiffs have alleged, among other things, that they have been required to undertake testing of the property. These testing costs are sufficient to constitute "special injury" to plaintiffs under section 3493. (See *Westwood Pharmaceuticals* v. *Nat. Fuel Gas Dist.* (W.D.N.Y. 1990) 737 F.Supp. 1272, 1281.)

D. *The complaint on its face does not show that defendant's acts were undertaken lawfully with the consent of the owner/lessor.*

In a variety of different contexts, defendant asserts that any disposal of waste was done lawfully and pursuant to the authority of the lease.

██ We agree that where, as here, an owner of property seeks damages for creation of a nuisance by a prior lessee, the lessee has a defense that his use of the property was lawful and was authorized by the lease; i.e., his use of the property was undertaken with the *consent* of the owner. An absence of consent is necessarily implied in the early California cases, discussed above, holding construction of ditches on plaintiff's property constituted a nuisance. (See *Courtwright* v. *B. R. & A. W. & M. Co., supra*, 30 Cal. at p. 574 ["the defendant with force and arms entered upon the land . . ."]; *Weimar* v. *Lowery, supra*, 11 Cal. at p. 104 ["defendants, against [plaintiff's] will, had dug a ditch across a portion of the lot . . ."]; *Fitzgerald* v. *Urton, supra*, 4 Cal. at p. 236 ["defendants persisted in trespassing, although warned off and forbidden by the plaintiff . . ."].)

Consent as a defense is also acknowledged by section 839 of the Restatement Second of Torts: "A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and

"(a) the possessor knows or should know of the condition and the nuisance or unreasonable risk of nuisance involved, and

"(b) he knows or should know that *it exists without the consent of those affected by it*, and

"(c) he has failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it." (Italics added.)

Moreover, consent as a defense is necessary to avoid absurd results. Suppose, for example, A leases Blackacre to B for the purpose of operating

a quarry. B lawfully uses the land for that purpose and, at the end of the lease term, returns the land to A with a substantial and inevitable hole in the ground. We dare say it would be absurd to allow A to sue B for having created the inevitable hole that was the very object of the lease. The reason is that B, having acted lawfully with A's consent, has done nothing wrong and has therefore committed no tort. Nor is a successor owner in any better position than A. "Where the original owner has lost the right to sue by authorizing the construction of the private nuisance . . . he clearly can pass no right to sue to his grantee." (Note, *Torts: Nuisance: Defenses: "Coming to the Nuisance" as a Defense* (1953) 41 Cal.L.Rev. 148, 149, fns. omitted.) Nor is a defense of consent vitiated simply because plaintiffs seek damages based on special injury from public nuisance. "Where special injury to a private person or persons entitles such person or persons to sue on account of a public nuisance, both a public and private nuisance, in a sense, are in existence." (47 Cal.Jur.3d, Nuisances, § 24, p. 237, fns. omitted.)

By these remarks, we do not suggest that consent of an owner/lessor can impede the *abatement* of a public nuisance. This case involves a claim for *damages* for special injury from a public nuisance and our remarks are necessarily limited to the present context.

We are aware that, in his Summary of California Law, Witkin remarks that consent is not a defense to an action for nuisance. (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 150, p. 830.) However, the text accompanying the remark is as follows: "The so-called doctrine of 'coming to a nuisance' has generally been repudiated; i.e., the plaintiff may obtain injunctive relief even though the nuisance was already in operation, with his knowledge, when he acquired his own property." (*Ibid.*) "The early common law 'coming to the nuisance' rule, as stated in the leading case of *Rex* v. *Cross*,[8] was that if a noxious trade were established in a place remote from habitations, those who afterward acquired property in the vicinity were barred from obtaining either damages or an injunction, having assumed the risk of the nuisance by purchasing property with knowledge of the conditions." (Note, *op. cit. supra*, 41 Cal.L.Rev. at p. 148; see *Eaton* v. *Klimm* (1933) 217 Cal. 362, 369 [18 P.2d 678]; *Williams* v. *Blue Bird Laundry Co.* (1927) 85 Cal.App. 388, 392 [259 P. 484].)

Here, we have no occasion to quarrel with the rejection of the doctrine of "coming to a nuisance." This action does not involve a new use of property "coming to" an older, established neighboring use. As is abundantly clear, this case involves a wholly different context: the assertion of a claim for damages by an owner of property against a former lessee. In these circumstances, for reasons already advanced, we are convinced that the lessee must

---

[8] 2 C. & P. 483, 172 Eng. Rep. 219 (1826).

have a defense that his use of the property was lawfully undertaken pursuant to the consent of the lessor.

■ Although we think that consent (as described) is a defense in this action, we cannot agree with defendant's argument that the complaint demonstrates consent and lawful use as a matter of law. Defendant relies upon paragraph 11 of the lease, which provides in part: "Lessors acknowledge that they are aware that certain activities of Lessee on the leased premises may be of a hazardous nature and that from time to time activities conducted on the premises may have an element of nuisance about them or resulting from them. In this connection, Lessors hereby covenant that they will acquiesce in any nuisance or hazard caused by Lessee on the premises."

This paragraph does not identify either the nature of the contemplated hazardous activity nor the nature of the contemplated nuisance. Moreover, other provisions of the lease make it unclear whether the lease contemplated the disposal of waste of the kind and in the amounts pleaded in the complaint. Thus, paragraph 11 further provides in part: "The leased premises may be used by Lessee for any and all lawful purposes. Lessee shall use and occupy the premises in conformity with all ordinances and laws solely at Lessee's risk. . . ." Paragraph 18 provides in part: "Lessee further agrees, during the term, not to . . . commit waste to the reversionary interest of Lessors." Moreover, as we have noted paragraph 8 provides in part, "Upon termination of this Lease, Lessee shall surrender the premises in as good state and condition as when received by Lessee, reasonable use and wear thereof consistent with the business engaged in by Lessee . . . excepted."

Construed together, these provisions are patently ambiguous with respect to whether the lease authorized hazardous waste disposal during the term of the lease and whether the lease imposed an obligation upon defendant to clean up any hazard before termination of the lease. Contrary to defendant's assertion, extrinsic evidence is necessary to determine the rights and obligations of the parties to the lease; the issue cannot be determined on demurrer.[9] (*Southern Pacific Land Co.* v. *Westlake Farms, Inc.* (1987) 188 Cal.App.3d 807, 814-817 [233 Cal.Rptr. 794]; see *Sierra Screw Products* v. *Azusa Greens, Inc.* (1979) 88 Cal.App.3d 358, 367-368 [151 Cal.Rptr. 799].)

Putting aside the question of the possible bar of the statute of limitations—a subject we shall address in a moment—the complaint states causes of action for damages for creation of public and private nuisances.

---

[9]Defendant contends the lease contained covenants or equitable servitudes running with the land. However, we see no immediate need to address this contention. It's import appears to be that the lease authorized defendant's conduct. That issue is properly embraced within our discussion of the defense of consent to creation of a nuisance. In any event, as we have recounted, the question whether the lease authorized defendant's conduct cannot be resolved on demurrer.

II

*The Complaint States a Cause of Action for Trespass*

■ Defendant contends the complaint fails to state a cause of action for trespass. We cannot agree.

The complaint pleads in pertinent part: "Aerojet has interfered with plaintiffs' right to possession of the Subject Property by wrongfully depositing hazardous substances on the Subject Property and failing and refusing to remove them at any time since plaintiffs acquired the Subject Property."

"Trespass is an unlawful interference with possession of property. [Citation.] Peaceable entry on land by consent is not actionable. [Citation.]" (*Girard* v. *Ball* (1981) 125 Cal.App.3d 772, 788 [178 Cal.Rptr. 406].)

Defendant contends one cannot trespass upon land in his own possession. However, as we have discussed, the lease arguably did not give defendant unrestricted possession of the land. Whether the lease authorized the disposal of the hazardous waste described in the complaint must be determined by extrinsic evidence. By plaintiffs' construction of the lease, defendant (a) wrongfully deposited hazardous waste on the property and (b) failed to clean it up as the lease required. These pleaded theories are sufficient to state a cause of action for trespass.

"[A] trespass may occur if the party, entering [land] pursuant to a limited consent, i.e., limited as to purpose or place, proceeds to exceed those limits by divergent conduct on the land of another. 'A conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with.' (Rest.2d Torts, § 168.)" (*Civic Western Corp.* v. *Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, 17 [135 Cal.Rptr. 915]; see *Rogers* v. *Duhart* (1893) 97 Cal. 500, 506 [32 P. 570]; *Red Bluff* v. *Southern Pacific Co.* (1919) 44 Cal.App. 667, 674 [187 P. 152]; 5 Witkin, Summary of Cal. Law, *op. cit. supra*, Torts, § 607, p. 706.) Moreover, section 160 of the Restatement Second of Torts provides in pertinent part: "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor or his predecessor in legal interest has placed on the land

"(a) with the consent of the person then in possession of the land, if the actor fails to remove it after the consent has been effectively terminated, . . ."[10]

These authorities support plaintiffs' theories of trespass. Putting aside for the moment the question of the bar of the statute of limitations, the complaint states a cause of action for trespass.

### III

*Plaintiffs Should Be Allowed to Amend Their Complaint to Allege Facts Showing Continuing Nuisance and Trespass.*

Defendant contends all of plaintiffs' counts are barred by the statute of limitations and that plaintiffs cannot escape this bar by any amendment to their complaint.

A. *A claim for damages for a permanent public nuisance is subject to the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (b).*

■ Plaintiffs assert their count based upon public nuisance is not barred by the statute of limitations because in their view a claim based on public nuisance is never barred by the statute of limitations. This argument is not well taken.

Plaintiffs assert there is no statute of limitations running on their claim for public nuisance because section 3490 provides: "No lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right."

Section 3490 has been construed to mean that the statute of limitations is no defense to an action brought by a public entity to abate a public nuisance. (*Cloverdale* v. *Smith* (1900) 128 Cal. 230, 235 [60 P. 851]; *City of Turlock* v. *Bristow* (1930) 103 Cal.App. 750, 756 [284 P. 962]; 11 Witkin, Summary of Cal. Law, *op. cit. supra*, Equity, § 124, p. 805.) However, where *private citizens* have sued for *damages for special injury* based on public nuisance, our Supreme Court has characterized the nuisance as either "continuing" or

---

[10]Defendant contends this section is inapplicable because plaintiffs did not have possession of the land when the trespass occurred. This view overlooks the Restatement's characterization of the rule of section 160 as one of continuing trespass as comment h to section 160 makes clear: "The rule of continuing trespass is applicable not only where the ownership or possession of the structure, chattel, or other thing is transferred after such thing comes upon the land . . . but also where the possession of the land is transferred thereafter . . . ."

"permanent" and has used the characterization to determine whether the suit is subject to the statute of limitations. As we shall explain, where a private citizen sues for damage from a permanent nuisance, the statute of limitations begins to run upon creation of the nuisance. Where a continuing nuisance is alleged, every continuation of the nuisance gives rise to a separate claim for damages caused by the nuisance.

Thus, for example, in *Phillips* v. *City of Pasadena* (1945) 27 Cal.2d 104 [162 P.2d 625], plaintiff sued for damages for the unlawful obstruction of a public road. Although the Supreme Court did not expressly characterize the nuisance as "public," the court cited section 3493, quoted above, which is applicable only to public nuisances and which allows a private person to maintain an action if the public nuisance is specially injurious. (*Id.* at p. 106.) In any event, it is settled that the obstruction of a public road or street is a public nuisance. (*Gardner* v. *Stroever* (1891) 89 Cal. 26, 29 [26 P. 618].)

Addressing defendant's contention that plaintiff's claim was barred by the statute of limitations, the *Phillips* court concluded, "Where a nuisance is of such character that it will presumably continue indefinitely it is considered permanent, and the limitations period runs from the time the nuisance is created. [Citations.] On the other hand, if the nuisance may be discontinued at any time it is considered continuing in character. [Citations.] Every repetition of a continuing nuisance is a separate wrong for which the person injured may bring successive actions for damages until the nuisance is abated, even though an action based on the original wrong may be barred. [Citations.]" (*Phillips* v. *City of Pasadena, supra*, 27 Cal.2d at pp. 107-108.)

Our Supreme Court recently applied *Phillips*'s rule in *Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862 [218 Cal.Rptr. 293, 705 P.2d 866]. There, plaintiffs sued for (among other things) nuisance caused by noise, smoke, and vibrations from flights over their homes. The trial court ruled the action was barred by the statute of limitations. (*Id.* at p. 868.) In reversing the trial court, our Supreme Court framed the issue as whether the nuisance was permanent or continuing: "Two distinct classifications have emerged in nuisance law which determine the remedies available to injured parties and the applicable statute of limitations. On the one hand, permanent nuisances are of a type where ' "by one act a permanent injury is done, [and] damages are assessed once for all." ' . . . In such cases, plaintiffs ordinarily are required to bring one action for all past, present and future damage within three years after the permanent nuisance is erected. . . . Damages are not dependent upon any subsequent use of the property but are complete when the nuisance comes into existence. . . .

"On the other hand, if a nuisance is a use which may be discontinued at any time, it is considered continuing in character and persons harmed by it may bring successive actions for damages until the nuisance is abated. . . . Recovery is limited, however, to actual injury suffered prior to commencement of each action. Prospective damages are unavailable." (39 Cal.3d at pp. 868-869, citations and fns. omitted.)

Although *Baker*, like *Phillips*, does not expressly characterize the nuisance at issue as "public," the disturbance caused by flights over homes is indisputably a public nuisance because it affects at the same time an entire community or neighborhood. (§ 3480.) We therefore conclude the continuing/permanent nuisance distinction drawn by *Phillips* and *Baker* applies to private suits for damages based upon public nuisances.

Additional (albeit oblique) support for this conclusion is found in *McLean v. Llewellyn Iron Works* (1905) 2 Cal.App. 346 [83 P. 1082]. There, an owner of property abutting on public streets sued the owner of property on the other sides of the streets for having constructed structures that encroached on the streets. The trial court entered judgment for plaintiff on a nuisance theory. The court of appeal rejected defendant's claims that plaintiff had failed to show an injury special to himself and that the injury was barred by the statute of limitation. (*Id.* at pp. 349-350.) On the latter point, the court of appeal concluded, "A public nuisance cannot be legalized by prescription (Civ. Code, sec. 3490); nor, so long as the streets remain such, can the rights of abutting land owners be thus affected." (*Id.* at p. 350.)

Defendant petitioned for a hearing in our Supreme Court. That court denied a hearing, issuing an unusual opinion on the denial that provided in part: "It is, however, proper to say that we are not to be understood as affirming that portion of the opinion of the district court of appeal to the effect that the right of action by a private party to abate a public nuisance, because of special injury arising therefrom to him, may not be barred by the statute of limitations." (2 Cal.App. at p. 350)

Thus, where a private citizen sues for damages to real property caused by a public nuisance,[11] and the nuisance is permanent, the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (b) (for trespass or injury to real property), begins to run when the permanent nuisance is created. (*Baker, supra,* 39 Cal.3d at p. 869; *Phillips, supra,* 27 Cal.2d at p. 107.) The authorities cited by plaintiffs—*Tucker v. Watkins* (1967) 251 Cal.App.2d 327 [59 Cal.Rptr. 453] and *Wade v. Campbell* (1962)

---

[11] We have no occasion to examine claims for personal injury based on public nuisance. (But see *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 937-938 [101 Cal.Rptr. 568, 496 P.2d 480].)

200 Cal.App.2d 54 [19 Cal.Rptr. 173, 92 A.L.R.2d 966]—are not at odds with this rule because both cases involved continuing nuisances.[12]

B. *Plaintiffs may amend their complaint to plead facts showing a continuing nuisance.*

This leaves the question whether the nuisance alleged in the instant case is permanent or continuing. "In case of doubt as to the permanency of the injury the plaintiff may elect whether to treat a particular nuisance as permanent or continuing. [Citation.]" (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 870; *Spaulding* v. *Cameron* (1952) 38 Cal.2d 265, 268 [239 P.2d 625].)

Defendant argues that plaintiffs' complaint manifests an election of permanent nuisance.[13] Defendant points out that plaintiffs have alleged their property is "unusable and extremely difficult to market for an indefinite period of time" and there is "little likelihood that the Subject Property will ever be as valuable as it would have been if not contaminated." Moreover, defendant notes that plaintiffs seek to recover all diminution in the market value of their property by seeking an injunction that would make defendant buy the property from plaintiffs at its market value unaffected by contamination. This *form of relief* is incompatible with a claim based on injuries caused by continuing nuisance. (*Spaulding* v. *Cameron, supra,* 38 Cal.2d at pp. 269-270; *Plonley* v. *Reser* (1960) 178 Cal.App.2d Supp. 935, 937 [3 Cal.Rptr. 551, 80 A.L.R.2d 911].)

On the other hand, plaintiffs allege they can amend their complaint to allege facts showing a continuing nuisance, i.e., the contamination can be abated and defendant has entered into a federal consent decree agreeing to clean up the property. The question is whether these proposed averments sufficiently allege a continuing nuisance.

"The cases finding the nuisance complained of to be unquestionably permanent in nature have involved solid structures, such as a building encroaching upon the plaintiff's land (*Rankin* v. *DeBare* (1928) 205 Cal. 639 [271 P. 1050]), a steam railroad operating over plaintiff's land (*Williams,*

[12]Although not cited by plaintiffs, we note that continuing nuisances were also at issue in *Strong* v. *Sullivan* (1919) 180 Cal. 331 [181 P. 59, 4 A.L.R. 343] and in *Bowen* v. *Wendt* (1894) 103 Cal. 236 [37 P. 149].

[13]Should plaintiffs' complaint be construed as one for permanent nuisance, it would be barred by the statute of limitations for reasons discussed in part IV, *post.*

*supra*, 150 Cal. 624), or regrade of a street for a rail system (*Eachus* v. *Los Angeles etc. Ry. Co.* (1894) 103 Cal. 614 [37 P. 750]). . . .

" . . . . . . . . . . . . . . . . . . . . . . .

"The classic example of a continuing nuisance is an ongoing . . . disturbance, . . . caused by noise, vibration or foul odor. (E.g., *Vowinckel* v. *N. Clark & Sons* (1932) 216 Cal. 156, 158 [13 P.2d 733] [vibration, noise and noxious soot, smoke and gases emanating from pottery factory].) Indeed, even more substantial physical invasions of land have been held to be continuing in character. (E.g., *Tracy* v. *Ferrera* (1956) 144 Cal.App.2d 827, 828 [301 P.2d 905] [deflection of rain water and emission of noxious odors and fumes from neighbor's pipes and furnace].) As emphasized in *Tracy*, the distinction to be drawn is between encroachments of a permanent nature erected upon one's lands, and a complaint made, not of the location of the offending structures, but of the continuing use of such structures. (*Id., supra*, 144 Cal.App.2d at p. 828.) The former are permanent, the latter is not." (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra*, 39 Cal.3d at pp. 869-870, fns. omitted.)

Here, according to plaintiffs, no structures are involved and the nuisance consists of the offensive chemical pollution which can be abated. In the decisions of our Supreme Court, the crucial distinction between a permanent and continuing nuisance is whether the nuisance may be discontinued or abated. (39 Cal.3d at p. 869; *Kornoff* v. *Kingsburg Cotton Oil Co.* (1955) 45 Cal.2d 265, 270-271 [288 P.2d 507]; *Spaulding* v. *Cameron, supra*, 38 Cal.2d at p. 268; *Phillips* v. *City of Pasadena, supra*, 27 Cal.2d at p. 107; *Kafka* v. *Bozio* (1923) 191 Cal. 746, 751 [218 P. 753, 29 A.L.R. 833]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 425, p. 458.) We do not read *Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra*, 39 Cal.3d 862, as deviating from this rule. The majority opinion of Justice Reynoso expressly states that a continuing nuisance is one that may be discontinued at any time. (*Id.* at p. 869.) The majority opinion argued defendant was obligated by statute to curb noise pollution at the airport. (*Id.* at p. 873.) The ability of the airport to discontinue the noise pollution is therefore necessarily implied in the argument. The dissenting opinion of Justice Mosk argued the nuisance was permanent because injunctive relief against airplane flights was unavailable. (*Id.* at p. 875.) Therefore, the dispute between majority and dissent appears to focus not on whether a continuing nuisance is one that is abatable but rather on whether injunctive relief must be available in order for a nuisance to be abatable. That issue is not present in this case.

Plaintiffs' proposed pleading therefore meets the crucial test of a continuing nuisance: that the offensive condition is abatable.[14]

We note plaintiffs' land may be subject to a continuing nuisance even though defendant's offensive conduct ended years ago. That is because the "continuing" nature of the nuisance refers to the continuing damage caused by the offensive condition, not to the acts causing the offensive condition to occur. The point is illustrated by *Kafka* v. *Bozio, supra*, 191 Cal. 746. There, defendant constructed a building next to plaintiffs' building. As originally constructed, the defendant's building was straight and plumb. However, part of the building was built on soft ground, and, over time, the building tipped and leaned against plaintiffs' building, causing damage to the latter. Concluding plaintiffs had a good claim for continuing nuisance, the court said, " 'Where continuing or recurring injury results from a wrongful act or from a condition wrongfully created and maintained, such as a continuing nuisance or trespass, there is not only a cause of action for the original wrong arising when the wrong is committed, but separate and successive causes of actions, for the consequential damages arise as and when such damages are from time to time sustained; and therefore so long as the cause of the injury exists and the damages continue to occur, plaintiff is not barred of a recovery for such damages as have accrued within the statutory period beyond the action, although a cause of action based solely on the original wrong may be barred.' " (*Id.* at p. 751; see also *Phillips v. City of Pasadena, supra*, 27 Cal.2d 104 [city's act of installing locked gate on road constituted continuing nuisance].)

We are aware that the Second District Court of Appeal has recently concluded, "The salient feature of a continuing trespass or nuisance is that its impact may vary over time." (*Field-Escandon* v. *DeMann* (1988) 204 Cal.App.3d 228, 234 [251 Cal.Rptr. 49].) Assuming this test correctly states the law, plaintiffs suggest they can amend their complaint to satisfy the test. Thus, plaintiffs aver they "are prepared to prove at trial that the contamination has migrated or spread on the property continuously since it was initially dumped, and that therefore, its impact has varied over time." Presumably, plaintiffs are prepared to amend their complaint along these lines, thereby satisfying *Field-Escandon*'s test.

Plaintiffs' proposed pleadings do not directly contradict any facts pleaded by plaintiffs in their complaint. ■ Although these proposed averments are necessarily at odds with the *relief* requested by plaintiffs, the validity of a demurrer is determined with reference to the pleaded facts alleged to

---

[14]Needless to say, the continuing or permanent nature of the nuisance remains subject to proof at trial. Our task in reviewing the demurrer is to ascertain whether plaintiffs' proposed pleading should allow them to try to prove a continuing nuisance.

constitute a wrong, not the prayer for relief. (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 123 [109 Cal.Rptr. 799, 514 P.2d 111].)

 In cases of doubt respecting the permanency of an injury caused by a nuisance, courts are inclined to favor the right to successive actions. (*Kafka* v. *Bozio, supra*, 191 Cal. at p. 752.) ". . . [W]e should be particularly cautious not to enlarge the category of permanent nuisances beyond those structures or conditions that truly are permanent. Where some means of abatement exists, there is little or no incentive to make remedial efforts once the nuisance is classified as permanent." (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra*, 39 Cal.3d at p. 872.) Whether contamination by toxic waste is a permanent or continuing injury is ordinarily a question of fact turning on the nature and extent of the contamination. (See, e.g., *Piccolini* v. *Simon's Wrecking* (M.D.Pa. 1988) 686 F.Supp. 1063, 1075-1077; *Merry* v. *Westinghouse Elec. Corp.* (M.D.Pa. 1988) 684 F.Supp. 852, 855-856.) We therefore conclude plaintiffs should be allowed to amend their complaint to state their proposed facts so as to aver a theory of continuing nuisance and to seek damages caused them within three years of the date of filing the complaint.[15] (Code Civ. Proc., § 338, subd. (b); *Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra*, 39 Cal.3d at p. 869.)

C. *Plaintiffs may amend their complaint to allege a continuing trespass.*

 Historically, the application of the statute of limitations for trespass has been the same as for nuisance and has depended on whether the trespass has been continuing or permanent. (See *Kafka* v. *Bozio, supra*, 191 Cal. 746, see also *Kornoff* v. *Kingsburg Cotton Oil Co., supra*, 45 Cal.2d 265; *Spaulding* v. *Cameron, supra*, 38 Cal.2d at p. 268.) As we have recounted, the crucial test of the permanency of a trespass or nuisance is whether the trespass or nuisance can be discontinued or abated. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority, supra*, 39 Cal.3d at p. 869; *Kafka* v. *Bozio, supra*, 191 Cal. at p. 751.) We have already seen how plaintiffs' proposed amendments to their complaint meet this test.

We note that plaintiffs' theory of continuing trespass is sanctioned by the Restatement Second of Torts, which states: "(b) Continuing trespass. The actor's failure to remove from land in the possession of another a thing which he has tortiously . . . placed on the land constitutes a continuing

---

[15]Plaintiffs have pleaded counts for both public and private nuisance. As we have said, a public nuisance is one that affects an entire community or neighborhood or any considerable number of persons. (§ 3480.) A private nuisance is any nuisance not otherwise defined as a public nuisance. (§ 3481.) Our analysis of the application of the statute of limitations applies equally to plaintiffs' counts for public and private nuisance.

trespass for the entire time during which the thing is on the land and . . . confers on the possessor of the land an option to maintain a succession of actions based on a theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass." (*Id.* at § 161, com. b; see *Merry* v. *Westinghouse Elec. Corp., supra*, 684 F.Supp. at p. 855.)

We therefore conclude plaintiffs should be afforded the opportunity to amend their complaint clearly to allege facts that show a continuing trespass.

IV

*Plaintiffs' Counts for Negligence, Negligence Per Se, and Strict Liability Are Barred by the Statute of Limitations.*

We have no occasion to determine whether plaintiffs' counts for negligence, negligence per se, or strict liability state facts sufficient to constitute a cause of action because, assuming they do, each is barred by the statute of limitations. The parties agree each of these counts is subject to the three-year statute of limitations in section 338, subdivision (b) of the Code of Civil Procedure. As we shall explain, plaintiffs had good reason to inquire about (and therefore learn about) these matters more than three years before their complaint was filed.

In the third count, the complaint avers defendant was negligent by selecting the subject property as a site for hazardous substance disposal, improper disposing of hazardous substances, failing to determine the nature and extent of the contamination, failing to contain or remedy the contamination, and failing to inform plaintiffs of the contamination.

The fourth count, for negligence per se, is premised on defendant's alleged violation of statutes and regulations by their discharge of hazardous waste on the property and into the waters of the state.

The sixth count, for strict liability, is premised on defendant's alleged use, disposal, storage and maintenance of hazardous substances on the subject property.

The traditional rule is that a statute of limitations begins to run upon the occurrence of the last element essential to the cause of action, even

if the plaintiff is unaware of his cause of action.[16] (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 406 [163 Cal.Rptr. 711].)[17] The harshness of that rule has been ameliorated in cases where it would be manifestly unjust to deprive a plaintiff of a cause of action before he is aware he has been injured. (*Ibid.*) A cause of action under this discovery rule accrues when " 'plaintiff either (1) actually discovered his injury and *its negligent cause* or (2) could have discovered injury *and cause* through the exercise of reasonable diligence [italics added].' " (*Id.* at p. 407, citing *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 96-97 [132 Cal.Rptr. 657, 553 P.2d 1129].) The limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry. (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111 [245 Cal.Rptr. 658, 751 P.2d 923].) Subjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation. (*Ibid.*; *Miller* v. *Bechtel Corp.* (1983) 33 Cal.3d 868, 875 [191 Cal.Rptr. 619, 663 P.2d 177].)

 Whether the discovery rule applies at all is initially a matter of pleading. As this court has held, "A plaintiff who relies on this exception must plead facts justifying delayed accrual; the complaint must allege (1) the time and manner of discovery and (2) the circumstances excusing delayed discovery. [Citations.]" (*G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 26 [122 Cal.Rptr. 218] [mandamus issued to compel trial court to sustain demurrer to products liability complaint against drug manufacturer].) This pleading requirement is a procedural safeguard against

---

[16]Both sides argue the traditional accrual rule applies, but with different results. Plaintiffs claim they did not sustain an injury (hence the statute did not begin to run) until they recently tried to sell their property, without success. However, the only case cited by plaintiffs, *Allred* v. *Bekins Wide World Van Services* (1975) 45 Cal.App.3d 984 [120 Cal.Rptr. 312], merely held a cause of action under the discovery rule accrues when the person sustains some damage and discovers or should discover his cause of action. Here, the injury was sustained by 1970. The infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period. (*DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011, 1025 [242 Cal.Rptr. 368].)

In view of our disposition, we need not address defendant's argument that the statute of limitations ran while the Cavitts, who had contemporaneous knowledge of the injury and its cause, still owned the land.

[17]In *Leaf, supra,* the trial court granted summary judgment to the defendant on the theory that the plaintiffs' cause of action was barred by the 10-year statute of limitations under Code of Civil Procedure section 337.15 (latent defects in construction of real estate). Claims under Code of Civil Procedure section 337.15 do not receive the benefit of the delayed discovery rule, because that statute specifies that claims accrue upon "substantial completion" of the construction. However, the reviewing court there found Code of Civil Procedure section 337.15 inapplicable and held that Code of Civil Procedure section 338, subdivision (2) (now (b)) governed. (*Id.* at pp. 402, 405 fn. 2.) Therefore defendant's assertion that plaintiffs have not alleged any latent defect within Code of Civil Procedure section 337.15 is a red herring.

lengthy litigation on the issue of accrual. (*April Enterprises, Inc.* v. *KTTV* (1983) 147 Cal.App.3d 805, 832 [195 Cal.Rptr. 421].)

 Here, the complaint alleges that defendant released toxic substances on the property from 1960 to 1970. Plaintiffs acquired their interests in the property between 1975 and 1983. The lawsuit was filed on January 14, 1988, and alleges that plaintiffs did not learn of the hazardous conditions until "recently." The complaint fails to allege when plaintiffs made the discovery, the circumstances of the discovery and why, in the exercise of reasonable diligence, they could not have made the discovery sooner.

The question then becomes whether the defect can be cured by amendment, a question properly before us despite plaintiffs' failure to seek leave to amend in the trial court. (Code Civ. Proc., § 472c.) The burden is on plaintiffs to show that amendment can save the complaint. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)

Plaintiffs set forth the following additional facts which they intend to plead if allowed to do so:

"In late 1979, the Manginis were contacted by an investigator for the California Department of Justice, who informed the Manginis that he was conducting an investigation of [defendant's] hazardous waste disposal practices and was interviewing people who owned land near [defendant's] Sacramento facilities. The investigator asked the Manginis whether they had any knowledge of [defendant's] waste disposal practices in the area. The Manginis told him that they did not. He informed them that there was no reason for them to be concerned about any environmental problems on their property."

"On or about April 24, 1984, more than four years later, the Manginis received a letter from [defendant] asking for permission to inspect the property. For the next two years, [defendant] discussed with the Manginis its plans for inspecting and conducting tests on the property. Never during that period of time did [defendant] tell the Manginis anything about the nature of [defendant's] activities while it had leased the property." An access agreement sent by defendant to plaintiffs indicated defendant had used the property as a "buffer zone." "[Defendant] did not inform the Manginis that the property had been used for disposal of hazardous substances. Nor did [defendant] tell the Manginis why it was interested in conducting tests on the property. When the Manginis asked questions, [defendant] put them off with vague answers, telling them that the planned investigation was part of [defendant's] general environmental analysis of the area."

At some undisclosed time, defendant took soil samples and plaintiffs hired an independent laboratory. In January 1987, defendant gave plaintiffs its laboratory test results, which appeared to show chemical contamination in the soil, but told plaintiffs this was laboratory error. In April 1987, the Sacramento Air Pollution Control District informed plaintiffs their property was contaminated with hazardous substances. In mid-1987, plaintiffs retained an attorney and obtained United States Environmental Protection Agency (EPA) records, including 1979-1980 Department of Justice investigative reports.

Plaintiffs state, "Those reports disclosed for the first time to the Manginis the nature of [defendant's] activities while it had leased the property from 1960 to 1970. The reports showed that [defendant] had disposed of thousands of pounds of trichloroethylene (TCE), ammonium perchlorate rocket fuel and other chemical contaminants on the property. Trenches were dug, barrels of waste were ignited, and ponds on the property were used as a hazardous waste dumping ground. These alterations were subsequently covered. The reports also showed that the California Attorney General's Office and the EPA had filed lawsuits against [defendant] to compel it to clean up contamination on property which [defendant] owned or leased in the Sacramento area."[18] Plaintiffs filed their complaint on January 14, 1988.

 We treat these facts as admissions. " '[W]hile briefs and arguments are outside the record, they are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' " (*DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011, 1019, fn. 3 [242 Cal.Rptr. 368].)

 Thus, in 1984, more than three years before filing the complaint, plaintiffs knew the following facts: (1) the recorded lease gave notice that defendant had engaged in activities of a potentially hazardous nature on their land (see *Fair* v. *Stevenot* (1866) 29 Cal. 486, 488-489; *American Medical International, Inc.* v. *Feller* (1976) 59 Cal.App.3d 1008, 1020 [131 Cal.Rptr. 270]); (2) the Department of Justice investigated defendant's practices regarding disposal of hazardous waste in the area; and (3) defendant asked plaintiffs for permission to inspect their property.

Whether any of these three facts in isolation would be sufficient to impart notice is open to dispute. However, the combination of these facts together establish as a matter of law that, when defendant contacted plaintiffs in

[15]Defendant's request that we take judicial notice of the government's lawsuit is denied. That the lawsuit specifically refers to plaintiffs' property, as defendant concedes, is unnecessary to our resolution of this case.

1984, plaintiffs had sufficient information to put them on notice of the possibility that defendant had dumped hazardous waste on their land.

That defendant gave evasive, or even untruthful, reasons for the inspection did not relieve plaintiffs of their duty of inquiry once they had sufficient facts to suspect the cause of action. Indeed, the evasiveness gave further reason for suspicion.

Here, had plaintiffs investigated in a timely fashion, they would have discovered the Department of Justice reports, which they admittedly received shortly after requesting them from the EPA in 1987. Plaintiffs are charged with knowledge of the information in those reports. "[W]hen knowledge had by or imputed to plaintiff is such as to compel the conclusion that a prudent man would have suspected [the cause of action], the court may determine, as a matter of law, that there had been discovery." (*National Automobile & Cas. Ins. Co.* v. *Payne* (1968) 261 Cal.App.2d 403, 409 [67 Cal.Rptr. 784].)

We therefore conclude the statute of limitations on plaintiffs' claims for negligence, negligence per se, and strict liability began to run no later than April 24, 1984, when plaintiffs received defendant's letter asking to inspect the property. These claims, asserted in the complaint filed January 14, 1988, are barred by the three-year statute of limitations. (Code Civ. Proc., § 338, subd. (b).)

V

*Plaintiffs Counts for Equitable Indemnity and Declaratory Relief Are Not Barred by the Statute of Limitations.*

In their 10th count, plaintiffs allege they have been compelled by governmental authorities to undertake testing of the property and may be required to abate hazardous conditions. The complaint pleads, "The costs incurred by plaintiffs in investigating and abating the conditions at the Subject Property are and will be the result of defendants' illegal and improperly management of hazardous substances at the Subject Property and failure to inform plaintiffs of the hazardous condition of the Subject Property. [¶] . . . [P]laintiffs are entitled to full, equitable indemnity from . . . defendants for all costs presently incurred, or which may be incurred, by plaintiffs in testing for and abating the hazardous conditions at the Subject Property."

In their 11th count, plaintiffs seek a declaratory judgment delineating the respective obligations of the parties for the testing and abatement costs described above.

Defendant does not dispute that plaintiffs have pleaded facts sufficient to state causes of action in these counts. (See, e.g., *Selma Pressure Treating Co.* v. *Osmose Wood Preserving, Inc., supra*, 221 Cal.App.3d 1601.) Rather, defendant argues the counts are barred by the statute of limitations.

Defendant asserts, "Where the underlying causes of action are barred by limitations, so too is any claim for indemnity arising out of them." This assertion incorrectly states the law.

 It is well settled that, in the absence of a contrary statutory command, a cause of action for equitable indemnity does not come into existence until the indemnitee has suffered loss through payment. (*Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 612 [189 Cal.Rptr. 871, 659 P.2d 1160]; *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 751 [163 Cal.Rptr. 585, 608 P.2d 673]; *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d 505].) "[A] tort defendant does not lose his own independent right to seek such recovery simply because the injured party is barred from pursuing its separate claim against the additional defendant by the applicable statute of limitations. [Citations.]" (*People* ex rel. *Dept. of Transportation, supra,* 26 Cal.3d at p. 752; see *Valley Circle Estates, supra,* 33 Cal.3d at p. 611; *Postley* v. *Harvey* (1984) 153 Cal.App.3d 280, 284-285 [200 Cal.Rptr. 354].)

*Wagner* v. *State of California* (1978) 86 Cal.App.3d 922 [150 Cal.Rptr. 489], cited by defendant, is inapposite. There, this court held that a cross-complaint for equitable indemnity, filed in an action based upon a patent deficiency in real property, was barred by the statute of limitations. (*Id.* at pp. 927-928.) We relied upon the language of Code of Civil Procedure section 337.1, which states in pertinent part, "Except as otherwise provided in this section, no action shall be brought to recover damages from any person performing or furnishing the design, . . . or construction of an improvement to real property more than four years after the substantial completion of such improvement . . . ." (*Id.* at p. 927, fn. 2.) We concluded that since the statute provided "*No* action" could be brought after four years, and since the statute did not except actions for equitable indemnity from its purview, an action for equitable indemnity had to be brought within the four years from the substantial completion of the improvement. (*Id.* at p. 928.)

Code of Civil Procedure section 337.1 is inapplicable here. Defendant cites no correlative statutory language that would displace the ordinary rule that, "A tort defendant retains the right to seek equitable indemnity from another tortfeasor even if the plaintiff's action against the cross-defendant is

barred by the statute of limitations." (*Valley Circle Estates, supra,* 33 Cal.3d at p. 611.)

Even assuming the statute of limitations on a claim for equitable indemnity is one year (*Smith* v. *Parks Manor* (1987) 197 Cal.App.3d 872, 882 [243 Cal.Rptr. 256]), plaintiffs' count for equitable indemnity is not barred because the complaint does not disclose when plaintiffs incurred costs for testing or cleanup of the hazardous waste. ■■■ "In order for the bar of the statute of limitations to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows merely that the action may be barred. [Citation.]" (*McMahon* v. *Republic Van & Storage Co., Inc.* (1963) 59 Cal.2d 871, 874 [31 Cal.Rptr. 603, 382 P.2d 875].)

Plaintiffs' 11th count for declaratory relief is not barred for the same reason. Reasonably construed, this count seeks a declaration of plaintiffs' right to the equitable indemnity pleaded in their 10th count. Plaintiffs may seek such a declaration. (*Valley Circle Estates, supra,* 33 Cal.3d 604.) ■■■ As defendant acknowledges, the statute of limitations governing a request for declaratory relief is the one applicable to an ordinary legal or equitable action based on the same claim. (*Maguire* v. *Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062]; 3 Witkin, Cal. Procedure, *op. cit. supra,* Actions, § 475, p. 506.) Here, the underlying claim is for equitable indemnity. The count for declaratory relief is not barred for the same reason the count for indemnity is not barred.

VI

*Plaintiffs' Count For Violation of Business and Professions Code Section 17200 Fails to State Facts Sufficient to Constitute a Cause of Action.*

■■■ In their ninth count, plaintiffs allege, "The nuisance created and maintained by defendants . . . in violation of Civil Code section 3479 and their conduct as alleged in this complaint constitute unfair business practices" in violation of Business and Professions Code section 17200.

When we read the complaint as a whole, as we are required to do (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318), it appears that defendant's wrongful conduct occurred during its leasehold, between 1960 and 1970.

Business and Professions Code section 17200 (hereafter section 17200) provides in relevant part that "unfair competition shall mean and include unlawful, unfair or fraudulent business *practice* . . . ." (Italics added.) Our

Supreme Court has held that "practice" requires, at a minimum, ongoing conduct. (*State of California* ex rel. *Van de Kamp* v. *Texaco, Inc.* (1988) 46 Cal.3d 1147, 1169-1170 [252 Cal.Rptr. 221, 762 P.2d 385].) Relief under section 17200 is unavailable to remedy past misconduct. (*Ibid.*)

In this case, when the complaint is given "a reasonable interpretation" (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318), it shows defendant's alleged misconduct occurred some 20 years ago. Therefore, section 17200 affords no remedy for the misconduct. (*Ibid.*)

Plaintiffs assert their claim under section 17200 should survive because their claims for continuing nuisance survive. The argument is unconvincing. As we have explained, the theory of continuing nuisance is not premised upon new wrongful conduct but upon the characterization of continuing *damages* as a continuing nuisance. (*Kafka* v. *Bozio, supra,* 191 Cal. at p. 751.)

Where, as here, defendant's wrongful conduct occurred many years ago, plaintiffs may not rely on the law of continuing nuisance to create a present pattern or practice of conduct required for relief under section 17200.

Plaintiffs' ninth count does not state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).)

### CONCLUSION

Defendant's demurrer to plaintiffs' third, fourth, sixth and ninth "causes of action" was properly sustained without leave to amend. Defendant's demurrer may not be sustained with respect to plaintiffs' first, second, fifth, tenth, and eleventh "causes of action." On remand, the trial court shall vacate its order sustaining the demurrer with respect to the latter "causes of action" and shall allow plaintiffs to file an amended complaint as described in the opinion.

### DISPOSITION

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

Sparks, Acting P. J., and Marler, J., concurred.

A petition for a rehearing was denied June 19, 1991, and respondents' petition for review by the Supreme Court was denied August 29, 1991.